Mary Lee ORSINI *v.* STATE of Arkansas

CR 84-61 691 S.W.2d 175

Supreme Court of Arkansas
Opinion delivered June 17, 1985

*John H. Adametz, Jr.* and *William H. Craig*, for appellant.

*Steve Clark*, Att'y Gen., by: *Theodore Holder*, Asst. Att'y Gen., for appellee.

ALSTON JENNINGS, Special Chief Justice. Appellant, Mary Lee Orsini, was found guilty of first degree murder in connection with the death on March 11, 1981, of her husband, Ron Orsini, and she appeals from the judgment of the trial court by which she was sentenced to life imprisonment. As grounds for reversal, appellant contends: (1) the information filed against her by the prosecuting attorney should have been quashed or dismissed, (2) there was no substantial evidence to support the jury's finding, (3) rulings of the trial court on several issues regarding the admission or exclusion of evidence were erroneous, and (4) the Court erred in instructing the jury, over the objection of appellant, on accomplice liability.

We hold that there was no substantial evidence to support a finding that appellant was an accomplice in the commission of the offense of first degree murder by some other person, and the trial court committed prejudicial error by instructing the jury, over the objection of appellant, pursuant to AMCI 401 and by amending AMCI 1502 by adding the language "or an accomplice".

The instruction of which appellant complains reads as follows:

> "In this case the State does not contend that Mary Lee Orsini acted alone in the commission of the offense of murder 1st degree. A person is criminally responsible for the conduct of another person when he is an accomplice in the commission of an offense.
>
> "An accomplice is one who directly participates in the commission of an offense or who, with the purpose of promoting or facilitating the commission of an offense, aids, agrees to aid, or attempts to aid, the other person in planning or committing the offense.
>
> " 'Purpose—a person acts with purpose with respect to his conduct or a result thereof when it is his conscious object to engage in conduct of that nature or to cause such a

result.' "

Although the instruction avers that "the State does not contend that Mary Lee Orsini acted alone in the commission of the offense", the State did, in fact, so contend, and the giving of the accomplice instruction permitted the State to argue alternatively that appellant murdered her husband or that someone else murdered him with her aid. The instructions permitted the State to maintain simultaneously that appellant killed her husband because no one else could have done it and that if someone else killed him she must have participated in the crime. In many situations such alternative possibilities are properly submitted to the jury, but in this case there is no substantial evidence to support the theory that the appellant was aided by an accomplice. We briefly review the testimony that might be regarded as supporting the second possibility.

■ There was testimony of a neighbor with regard to movements of an automobile on the street near appellant's home at about the time of the shooting from which one might conclude that some person had left the vehicle and then reentered it a few minutes later. Even assuming that conclusion to be correct, there is absolutely no evidence that the Orsini home was entered by any such person. Nor is there any evidence of any kind that appellant participated in any way with anyone else in the commission of the crime. The state relies on the fact that there was no evidence of forcible entry into the home to support an inference that appellant must have aided another person in entering, assuming, of course, that some other person did enter. The State also relies on conduct and statements of appellant subsequent to the death of her husband to support the giving of the accomplice instruction. Such evidence, however, does not point in any way to the existence of another offender, but rather tends to support the State's contention that appellant was herself the perpetrator. It is obvious that before the jury could find that appellant was an accomplice to the crime of murder it would be necessary to speculate first that some other person killed the decedent and to speculate further that appellant aided such person. There is no substantial evidence to support such a finding, and the giving of the accomplice instruction was prejudicial and erroneous.

■ We do not mean to say that there may not be circumstances under which it would be appropriate to permit a jury to

consider whether the defendant committed the crime in person or was an accomplice. We merely hold that the facts of this case do not permit the alternative submission.

Since we are reversing because of the giving of the accomplice instruction, we need not consider the assignments of error in admitting and excluding evidence, but we do not find any merit in the appellant's contentions on those issues.

 The death of Ron Orsini was investigated by a grand jury and a No True Bill was returned in July of 1981. On January 24, 1983, the prosecuting attorney filed a felony information charging appellant with first degree murder. Amendment 21 to the Constitution of the State of Arkansas permits the initiation of prosecution by information filed by the prosecuting attorney. Appellant, however, relies upon Ark. Stat. Ann. § 43-922 which provides that a charge can be again submitted to a grand jury after a No True Bill only upon direction of the Court. The issue is whether this statute prevents the filing of an information without court direction. We have not previously addressed this issue, but we now adopt the rule as stated in 42 C.J.S., *Indictment and Information*, §72, which reads as follows:

> "In the absence of a constitutional or statutory provision to the contrary, the acts of the grand jury with respect to the findings of an indictment, are not binding upon the prosecuting attorney with respect to his filing an information, and an information may be filed, although the grand jury has investigated the case and refused or failed to find an indictment. . . . A statute providing that, when a charge has been submitted to the grand jury and no bill returned, it shall not again be submitted without direction of the Court does not prevent an accusation by information after the grand jury has investigated the charge."

*See also Rea* v. *State*, 105 P. 381, 3 Okl. Cr. 269.

 Finally, we reject the contention of appellant that there was no substantial evidence to support the jury verdict. Certainly, the State's case was not overwhelming, and the question of the sufficiency of the evidence is a close one. However, it is not for us to determine whether we, as jurors, might have reached a different result. It is our duty to determine whether or not there was substantial evidence to support the finding by the jury. *Jones*

v. *State*, 269 Ark. 119, 598 S.W.2d 748 (1980); *Hutcherson* v. *State*, 262 Ark. 535, 558 S.W.2d 156 (1977).

The jury could have found that Ron Orsini was killed between eleven o'clock and midnight on March 11, 1981, by being shot in the crown of his head by a weapon held at a distance of from three to eight inches. At the time he was found, the decedent was lying in a double bed, and it appeared that at some time another person had occupied the bed. The bullet was found on the bed next to the body, but no weapon was found. The doors and windows of the house were all locked, and there was no evidence of forcible entry, although there were marks on a door leading into the house from the garage which could have been made by a wood chisel that was found in the garage.

There were only three persons in the house on the night of March 11. They were the decedent, the appellant, and appellant's daughter Tiffany. On the morning of March 12, the door to the bedroom in which decedent was found was locked, and appellant and her daughter left the house without attempting to enter the bedroom. The decedent's pickup truck was in the driveway at the time.

After going to breakfast with her daughter and taking her daughter to school, appellant returned to her home, used an instrument of some kind to open the bedroom door, found the body of her husband and called the police.

Subsequently, a trace metal detection test was performed on appellant's hands, and the results were negative for the holding or use of a weapon, but there were findings that were consistent with the holding by appellant of a wood chisel previously referred to.

The jury could have found that appellant told a witness that she had found a gun in the bed but couldn't remember what she did with it. The evidence would support a finding that appellant, two days after the crime, reported falsely that someone had attempted to break into her house and that she made references to the possibility of large sums of money having been in the decedent's bedroom, which references were untrue. The jury could have found that appellant dissuaded her daughter from attempting to enter the decedent's bedroom on the morning of March 12 so that the body would not be discovered at that time. There was evidence that appellant falsely stated to her employer

that her husband had bone cancer. The jury could have found that appellant was motivated to murder her husband by the prospect that his death might solve her financial problems.

Without detailing all of the evidence in the case, it is sufficient to advise that we cannot say that there was no substantial evidence to support the jury's verdict. However, because of the error in instructing the jury, the conviction is reversed and the case remanded.

JACK HOLT, JR., C.J. not participating.