**Mary Lee ORSINI, Appellant,**

v.

**Virginia WALLACE, Warden, Women's Unit, Arkansas Department of Correction, Appellee.**

No. 88–2581.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 11, 1989.

Decided Aug. 31, 1990.

Rehearing and Rehearing En Banc Denied Oct. 16, 1990.

Byron Rhodes, Hot Springs National Park, Ark., Lynn Pruitt, Little Rock, Ark., for appellant.

Clint Miller, Little Rock, Ark., for appellee.

Before FAGG, Circuit Judge, HEANEY, Senior Circuit Judge, and BRIGHT, Senior Circuit Judge.

HEANEY, Senior Circuit Judge.

In 1982, Mary Lee Orsini was convicted in Pulaski County, Arkansas, Circuit Court, for the capital murder of Alice McArthur. She was sentenced to a term of life imprisonment without parole. Her conviction was affirmed by the Arkansas Supreme Court, *Orsini v. State*, 281 Ark. 348, 665 S.W.2d 245 (1984), and the United States Supreme Court denied certiorari. *Orsini v. Arkansas*, 469 U.S. 847, 105 S.Ct. 162, 83 L.Ed.2d 98 (1984). Orsini then petitioned unsuccessfully for state post-conviction relief. *Orsini v. State*, 287 Ark. 456, 701 S.W.2d 114 (1985).

Orsini subsequently petitioned for a writ of habeas corpus in the United States District Court for the Eastern District of Arkansas. She asserted sixteen separate grounds for relief. A United States magistrate, proceeding with the consent of the parties and pursuant to the congressional grant of authority in 28 U.S.C. § 636(c), entered a final judgment denying Orsini's petition without an evidentiary hearing. Orsini appeals from the final judgment of the magistrate. She contends on appeal that: (1) she was denied due process when prior inconsistent statements of material witnesses and when the details of special inducements given to "Yankee" Hall, a co-conspirator, to testify against Orsini were withheld by the prosecutor's office; (2) she was denied her right to a fair trial because the prosecutor permitted the known perjured testimony of three key material witnesses, including that of "Yankee" Hall, to stand unrefuted at trial, released Hall's close-up confession implicating Orsini a few days before trial, and engaged in other misconduct; (3) she was denied her right to a fair trial as a result of pretrial publicity; and (4) she received ineffective assistance

of counsel at trial and on direct appeal.[1] We initially address, *sua sponte*, the question of whether the magistrate had jurisdiction to hear and render final judgment on Orsini's habeas petition.

## I. JURISDICTION

■ The parties concede that statutory authority exists for a magistrate to enter final judgment on a habeas petition with the consent of the parties involved. They do so even though the Federal Magistrates Act has been consistently given a narrow interpretation. *See Gomez v. United States*, —— U.S. ——, 109 S.Ct. 2237, 2240, 104 L.Ed.2d 923 (1989); *United States v. Trice*, 864 F.2d 1421, 1429 (8th Cir.1988). Because this issue involves the subject matter jurisdiction of this Court, an independent determination of this issue is in order. Upon review of the language and history of the Federal Magistrates Act, we believe that Congress intended for magistrates to be authorized to conduct habeas proceedings within the limitations set forth in 28 U.S.C. § 636(c)(1). *See Sinclair v. Wainwright*, 814 F.2d 1516, 1519 (11th Cir.1987).

Section 636(c)(1) provides, in pertinent part:

(c) Notwithstanding any provision of law to the contrary—

(1) Upon consent of the parties, a full-time United States magistrate or a part-time United States magistrate who serves as a full-time judicial officer may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves.

28 U.S.C. § 636(c)(1) (1988). Both requisites are met in this case.[2]

Because habeas proceedings are customarily characterized as civil proceedings, *e.g.*, *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 2118, 95 L.Ed.2d 724 (1987); *Stewart v. Bishop*, 403 F.2d 674, 677 (8th Cir.1968), the plain language of section 636(c)—even in light of the specific inclusion of habeas petitions in section 636(b)(1)(B)—indicates that magistrates, upon consent of the parties and reference by the district court, have jurisdiction to order entry of judgment in a habeas case.

While an argument can be made that Congress did not intend to authorize magistrates to enter judgments in habeas petitions, we do not believe that it withstands careful scrutiny. In our view, the legislative history confirms the plain meaning of section 636(c). In 1976, in an effort to overrule *Wingo v. Wedding*, 418 U.S. 461, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974),[3] Con-

---

**1.** Orsini raises several other issues which we have considered but find to be without merit. These include: (1) that the Arkansas Supreme Court which heard her direct appeal was not an impartial tribunal and (2) that she was denied the opportunity of presenting the impartial tribunal issue in her state post-conviction proceeding and in the habeas proceeding before the federal district court. Many of her claims are based on information she received through the Arkansas Freedom of Information Act following her conviction.

**2.** Neither party claims that the district court did not refer this matter to the magistrate to make a final judgment. As to whether Orsini consented to this procedure, counsel for Orsini, in response to our order requesting supplemental briefs on the issue of the magistrate's jurisdiction, assert that Orsini's consent was invalid. They claim that her uncounseled consent at the district court level is not sufficient. We need not reach that issue because Orsini waived this argument by not asserting the defect until our request for supplemental briefs. Furthermore, she has waived any constitutional defects aris-

ing from the due process clause. She cannot, however, waive jurisdictional defects arising from Article III of the United States Constitution.

**3.** The Supreme Court in *Wingo* considered the language in 28 U.S.C. § 2241(a) as vesting the power to grant habeas corpus relief in "the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions" and held that Congress intended to extend habeas powers to full Article III judges but not magistrates. *Wingo*, 418 U.S. at 472, 94 S.Ct. at 2849. Congress subsequently amended the Federal Magistrates Act, explicitly permitting magistrates to conduct evidentiary hearings and make reports and recommendations in habeas matters. 28 U.S.C. § 636(b)(1)(B).

The 1976 Advisory Committee Note to Rule 10 of the Rules Governing Section 2254 Cases provides:

It has been suggested that magistrates be empowered by law to hold hearings and make

gress passed section 636(b)(1)(B), intending the language "notwithstanding any provision of law to the contrary" to "overcome any problem which may be caused by the fact that scattered throughout the code are statutes which refer to 'the judge' or 'the court.'" H.R.Rep. No. 1609, 94th Cong., 2d Sess. 9 (1976), *reprinted in* 1976 U.S. Code Cong. & Admin.News 6162, 6169. In 1979, Congress passed section 636(c) with the same "notwithstanding any provision of law to the contrary" language. Although in this latter instance Congress did not specify its intention, it is fair to assume that Congress intended the same effect by the language in the 1979 Act as Congress did in the 1976 Act.[4] Also in 1979, the Supreme Court amended Rule 10 of the Rules Governing Section 2254 Cases in United States District Courts to provide a generic grant of authority: "The duties imposed on the judge of the district court by these rules may be performed by a United States magistrate pursuant to 28 U.S.C. § 636." In light of this, we believe that Congress intended section 636(c), as the plain language indicates, to authorize magistrates to enter judgments in habeas proceedings on consent of the parties and reference by the district court.

We next ask whether section 636(c) comports with Article III of the Constitution. In a non-habeas case, this Court, sitting *en banc,* held that it does not violate Article III for Congress to delegate case dispositive authority, which is the essence of the judicial power of the United States, to a non-Article III officer. *Lehman Bros. Kuhn Loeb v. Clark Oil & Refining,* 739 F.2d 1313 (8th Cir.1984). Eleven other circuits accept this view.[5] We reasoned that section 636(c) did not violate Article III because Article III courts firmly "control" each magistrate. *Id.* at 1316. This "control" results from the Judicial Conference participating in decisions regarding the pay, locale, and number of magistrates; the district court retaining the discretion to refer or recall any case from the magistrate; and review by a court of appeals as a matter of right. *Id.* at 1315–16. Judges Lay, Arnold and Bowman dissented.[6]

The only circuit to address the constitutionality of section 636(c) in a habeas setting is the Eleventh Circuit in *Sinclair v. Wainwright,* 814 F.2d at 1519. In that case, Senior Judge J. Smith Henley of the Eighth Circuit, sitting by designation,

---

final decisions in habeas proceedings. See Proposed Reformation of Federal Habeas Corpus Procedure: Use of Federal Magistrates, 54 Iowa L.Rev. 1158 (1969). However, the Federal Magistrates Act does not authorize such use of magistrates. *Wingo v. Wedding,* 418 U.S. 461 [94 S.Ct. 2842, 41 L.Ed.2d 879] (1974). See advisory committee note to rule 8. While the use of magistrates can help alleviate the strain imposed on the district courts by the large number of unmeritorious habeas petitions, neither 28 U.S.C. § 636(b) nor this rule contemplate the abdication by the court of its decision-making responsibility.

4. Further evidence confirming this intent exists. *See* S.Rep. No. 74, 96th Cong., 1st Sess. 2–5 (1979), *reprinted in* 1979 U.S.Code Cong. & Admin.News 1469, 1470–73 (statistical summaries listing prisoner petitions as one of the largest categories of cases handled by magistrates, and asserting that section 636(c) would permit magistrates to hear any civil matter without limitation).

5. *See, e.g., K.M.C. v. Irving Trust Co.,* 757 F.2d 752 (6th Cir.1985); *Gairola v. Commonwealth of*

*Va. Dep't of General Services,* 753 F.2d 1281 (4th Cir.1985); *D.L. Auld Co. v. Chroma Graphics Corp.,* 753 F.2d 1029 (Fed.Cir.1985); *Fields v. Washington Metro. Transit Auth.,* 743 F.2d 890 (D.C.Cir.1984); *Geras v. Lafayette Display Fixtures, Inc.,* 742 F.2d 1037 (7th Cir.1984); *Puryear v. Ede's Ltd.,* 731 F.2d 1153 (5th Cir.1984); *Collins v. Foreman,* 729 F.2d 108 (2d Cir.), *cert. denied,* 469 U.S. 870, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984); *Goldstein v. Kelleher,* 728 F.2d 32 (1st Cir.), *cert. denied,* 469 U.S. 852, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984); *Campbell v. Wainwright,* 726 F.2d 702, *aff'd memo.,* 734 F.2d 1480 (11th Cir.1984); *Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc.,* 725 F.2d 537 (9th Cir.), *cert. denied,* 469 U.S. 824, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984); *Wharton–Thomas v. United States,* 721 F.2d 922 (3d Cir.1983).

6. They reasoned that consent of the parties cannot cure a defect in subject matter jurisdiction. *Lehman,* 739 F.2d at 1318. They also expressed grave concern that upholding section 636(c) would lead to limiting the jurisdiction of Article III judges, thereby threatening the independence of the federal judiciary. *Id.* at 1319–20.

wrote an opinion holding section 636(c) constitutional, even in the habeas setting. *Id.* He reasoned that the provision was constitutional because consent was required and the district court retained some control over the magistrate. *Id.*

Orsini asserts that *Lehman* is not dispositive in this case because of the nature of the habeas proceeding. We disagree. Nothing in this Court's opinion in *Lehman* indicates that our holding was limited to jurisdiction over civil, non-habeas matters.[7] *See Lehman,* 739 F.2d at 1316; *Sinclair,* 814 F.2d at 1519. Moreover, Orsini's arguments fail because none of the arguments relate to traditional Article III concerns.[8]

**7.** *Lehman* and similar decisions in other circuits have their detractors. The fact that an Article III court controls—at least, in part—the pay, locale, and number of magistrates appears, in and of itself, to violate the Constitution rather than cure constitutional defect. *See, e.g., Hill v. Jenkins,* 603 F.2d 1256, 1259–60 (7th Cir.1979) (Swygert, J., concurring in the result). Article III, Section 1 of the Constitution provides that the "judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts *as the Congress may from time to time ordain and establish."* U.S. Const. Art. III, § 1 (emphasis added).

Relegating habeas petitions to non-Article III judges without *de novo* review, *see United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980), inherently weakens the judicial branch as a meaningful institutional protection against majority power in the legislative and executive branches. Because a habeas petitioner is, by definition, outside of the majority, a significant separation of powers question is presented. *See* Note, *Article III Constraints and the Expanding Civil Jurisdiction of Federal Magistrates: A Dissenting View,* 88 Yale L.J. 1023, 1059 (1979). This argument, at least as far as it relates to *de novo* review, was implicitly rejected by this Court in *Lehman. See Lehman,* 739 F.2d at 1318 (Lay, J., dissenting).

Second, relegating habeas petitions to magistrates may violate Article III, Section 2 of the Constitution, which states that the *"judicial Power* shall extend to all Cases, in Law and Equity, arising under this constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority; ..." A fair reading of this provision indicates that a substantive right to an independent federal judiciary to vindicate federal statutory and constitutional rights exists. At the very least, this reading requires a meaningful review by an Article III court. This may, however, only be true for habeas petitions when read in combination with the Suspension Clause of the Constitution, which reads: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in cases of Rebellion or Invasion the public safety may require it." *See also Developments in the Law—Federal Habeas Corpus,* 83 Harv.L.Rev. 1038, 1272 n. 55 (1970) (suggesting that expansion of rights under the Fourteenth Amendment necessitates a broader reading of the Suspension Clause).

Finally, the consent provision of section 636(c) does not cure any Article III concerns both because parties cannot consent to subject matter jurisdiction and because extending consent to its "inevitable conclusion" will eliminate civil jurisdiction from the federal courts, a result that is likely unconstitutional. *See* S.Rep. No. 1613, 95th Cong., 1st Sess. (1977), *reprinted as amended by the House in* H.R.Rep. No. 1364, 95th Cong., 2d Sess. at 38 (dissenting views of Reps. Drinan and Kindness) ("Under the consent theory, Congress could abolish all inferior Federal courts ... and replace them with a greatly expanded magistrate system. Litigants who desired a Federal forum would then only have to consent to appear before the magistrate in order to have their cases adjudicated.").

**8.** First, she asserts that because habeas petitions center on the most precious of constitutional rights—the right to personal freedom—*Lehman* is not dispositive of the due process issues. She did not raise the due process issues in district court; thus, they are waived. This same defect is present in her argument that the Suspension Clause of the Constitution sufficiently distinguishes her habeas petition from the non-habeas, civil matter presented in *Lehman.*

Orsini further claims that because the substance of her petition involves a challenge to her prosecution by the executive branch of the State of Arkansas, serious separation of powers concerns are raised that were not raised in *Lehman.* We disagree because the separation of powers concerns expressed by Article III deal with the interplay of the federal judicial branch and the federal executive or legislative branches rather than with the interplay between the federal judicial branch and the prosecutorial actions of one of the individual states.

Moreover, she contends that the nature of federal habeas relief involving state prisoners demands an independent decisionmaker. This argument is not based on traditional Article III concerns and cannot be maintained in the language of Section 1 of Article III. Rather, it is based on the due process clause of the Constitution, a personal constitutional right that can be waived. Accordingly, we hold that she has waived this contention.

Orsini's final argument—that a magistrate would decide cases in such a manner as to avoid conflict with its supervising district court—was considered and rejected by the Supreme Court in *Raddatz. Raddatz* concerned section 636(b)(1)(B) and its *de novo* review procedures. This argument, as Orsini applies it to

Finally, Orsini's argument that a remand is in order because her consent was uncounseled also fails because she did not raise that issue initially to this Court. Therefore, we hold that for purposes of Article III, section 636(c) is constitutional and that the magistrate had subject matter jurisdiction to enter judgment.

## II. THE DUE PROCESS AND FAIR TRIAL ISSUES

When one has had an opportunity to thoroughly digest Orsini's claims that she was denied due process and a fair trial, it becomes clear that the answer turns on several incidents involving "Yankee" Hall's pretrial statements and his testimony at trial.

"Yankee" Hall was the state's principal witness. Prior to trial Hall agreed with Sheriff Tommy Robinson and Prosecutor Wilbur "Dub" Bentley that in return for the state accepting his plea of guilty to first degree murder, rather than to capital murder, he would sign a confession detailing all the events surrounding his and Orsini's involvement in the murder of Alice McArthur. (A person found guilty of capital murder must be sentenced to death or life without parole. A person found guilty of first degree murder is eligible for parole.) Pursuant to a plea agreement, Hall gave and signed a long and detailed confession on August 29, 1982. In that confession Hall stated that he had been hired by Orsini to murder Alice McArthur. He recited that Orsini had been promised $15,000 by William McArthur, Alice's husband, if she would arrange the murder. Hall declared that he and Orsini attempted to bomb Alice McArthur's car, that the bomb had exploded, but that Alice McArthur was not injured. Hall stated that Orsini approached him again and stated that William McArthur still wanted his wife killed and had raised the ante to $25,000. Hall and Orsini then worked out a plan to kill Alice McArthur in her home. Hall then stated that he hired Larry McClendon, who was a

friend of his from the penitentiary, to be the trigger man. According to Hall, the $25,000 payment was to be split among himself, McClendon, and Orsini.

Hall stated that the plan was to have him and McClendon gain entry into the McArthur home by posing as flower delivery men. He stated that Orsini furnished the gun, a clip board, and a florist sign to lend reality to the flower delivery scheme. Orsini stole the murder weapon from a man she had been dating for several weeks, Dr. C.H. Wulz. On July 2, 1982, the date set for the murder, Hall picked up the flowers. Hall and McClendon then drove to the McArthur home in a car with the florist sign in the window. McClendon rang the doorbell. When the door was opened by Alice McArthur, McClendon entered the home and shot and killed her. Hall later threw the gun, sign, and clipboard into the river. Neither Hall nor McClendon was paid for the murder.

Hall was arrested on July 5, 1982, and McClendon was arrested on July 6, 1982. On July 4, 1982, Hall gave an oral statement to Little Rock police officers indicating that he barely knew Orsini and that she knew nothing of the murder. He added that he had not talked to her since the murder. Hall's July 4th statement was not given to Orsini before or during the trial. Orsini obtained it through the Arkansas Freedom of Information Act.

On September 2, 1982, Hall's August 29th confession was leaked to the Arkansas Democrat, a major Arkansas daily newspaper. With the release of the confession to the newspaper, a publicly aired controversy between Prosecutor Bentley and Sheriff Robinson broke out, and stories about the murder were in the newspaper for several days. The thrust of the controversy between Bentley and Robinson was that Robinson wanted William McArthur to be indicted and tried, but Bentley argued that there was insufficient evidence upon which to base an indictment of McArthur.[9] Hall's

---

section 636(c), fails because, without *de novo* review, less risk that a magistrate will decide a case in order to avoid conflict with its supervising district court exists.

9. A former United States Attorney, W.H. Dillahunty, was named special prosecutor to handle the case against McArthur. Ultimately, a deci-

August 29th confession was not introduced at trial. He testified, however, and his testimony was consistent with his confession.

■ We now relate Orsini's contention on appeal to the factual situation just described. Her first contention, that prior inconsistent statements were suppressed, relates primarily to the July 4th statement that Hall gave to the police to the effect that he did not know Orsini well and that she knew nothing about the murder. Her second contention, that the details of the special inducements given to witnesses in return for their testimony were withheld by the state, relates primarily to her assertion that Robinson told Hall that when he was elected governor, he would commute Hall's life sentence and that Hall would be released after only a few years. Orsini's third contention, that the prosecutor permitted the perjured testimony of three key material witnesses to stand unrefuted at trial, again relates primarily to inconsistencies between Hall's July 4th and August 29th statements.[10] She hypothesizes that Hall's July 4th statement was true and that the August 29th confession and trial testimony were the result of the special inducement offered by Robinson.

The magistrate, assuming the truth of Orsini's allegations, found that the withheld statements were not material and refused to grant the petitioner habeas relief. He did so on the basis of *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). In that case the Supreme Court held that evidence in nondisclosure cases is material only if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 682, 105 S.Ct. at 3383. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Id.* This court followed the *Bagley* standard in *United States v. Peltier*, 800 F.2d 772 (8th Cir.1986).

This case is one in which we cannot say that the evidence other than Hall's statement was so strong that the jury would have convicted Orsini had Hall's statement been suppressed. There can be little doubt that his detailed statement was a major factor in the jury's verdict of guilty. The question thus becomes whether Hall's credibility, which was subject to question because of his past convictions and life style, would have been weakened by the withheld evidence to the point that the jury probably would have rejected his testimony implicating Orsini. In light of all the evidence presented at trial, we do not believe that it would have been.

(1) Dr. Wulz testified at trial. He conceded that he had a close and intimate relationship with Orsini over a period of several weeks. He stated that the gun used to kill Alice McArthur was his, that the bullets used in the gun were identical to bullets that he had purchased several years ago, and that five bullets were missing from the box of bullets that he kept in his home. He further testified that Orsini had access to his home. No evidence was presented tending to show that either Hall or McClendon had similar access, that the home had been broken into, or that the weapon was stolen by a prowler. This unrefuted evidence powerfully supported Hall's testimony that Orsini recruited him to kill Alice McArthur.

(2) Two witnesses, Carl Wilson and Tammy Oaks, testified that Orsini accompanied Hall to Wilson's home the day they picked up the explosives used to bomb Alice McArthur's car. This evidence supports Hall's testimony that he and Orsini had planned to murder Alice McArthur for a long period of time.

(3) At least two witnesses testified that Orsini called the McArthur home several times on the day of the murder. The government's theory was that the calls were made to determine whether Alice McArthur was at home. This evidence lends

sion was made not to take the case before a grand jury and charges against William McArthur were not filed.

**10.** The other two witnesses were Carl Wilson and Larry Burge. We discuss their testimony in a subsequent section.

weight to Hall's testimony that Orsini was the organizer and facilitator of the murder.

(4) A short time after the murder occurred, Orsini prepared a handwritten script for a proposed telephone conversation between her and Larry Burge. Pursuant to the script, Burge called Orsini at her home. Orsini knew her phone was tapped by authorities. In that conversation, she indicated that she had been tipped off that a man named Larry McClendon had killed Alice McArthur. She did not implicate Hall personally, but stated that McClendon had an accomplice, referring to the accomplice as a "white man who ran with McClendon." This evidence supports Hall's testimony that Orsini concocted the plan to murder Alice McArthur.

(5) Hall knew details of the Orsini home. This information tended to support his statement that he had been in Orsini's home on six occasions prior to the murder and that he had been intimate with Orsini.

In sum, we believe that in light of this evidence, the jury would have found Hall's testimony and August 29th statement credible even if Orsini had been able to impeach Hall's testimony with the July 4th statement and the deal between Hall and Sheriff Robinson.

■ Orsini argues that Wilson's testimony is also suspect because the prosecution failed to disclose that Wilson had given an earlier statement to federal authorities in which he stated that he was unable to identify Orsini from a photograph as the woman who accompanied Hall to Wilson's farm when Hall picked up the explosives. She also contends that Wilson had been given immunity from prosecution and that fact was not made known to her or her counsel before trial. Although Wilson's prior failure to identify Orsini from the photograph may have had an impact on the jury, any such impact would have been weakened by the identification of Orsini by an independent witness who was also present at the Wilson farm. Moreover, Orsini's statement that she did not know that Wilson had been given immunity is simply not supported by the record.

Orsini argues that Burge's testimony is also subject to question because he gave a statement prior to trial which contradicted his trial testimony and because he was given immunity from prosecution. Neither fact, she alleges, was revealed to the defense. There is no merit to her first assertion. The pretrial statement simply was not exculpatory in nature. In it, Burge admitted that he made a call to Orsini's home in an attempt to recreate an anonymous call Orsini had allegedly received regarding the murder of Alice McArthur. We have more concern with respect to the failure of the state to reveal to Orsini that Burge was testifying under a grant of immunity, but the taped telephone conversation sufficiently buttressed his testimony.

In summary, the record reveals that the state withheld exculpatory information from Orsini and that it had no excuse for the withholding. Were the standard one which permitted reversal for the repeated withholdings, Orsini would prevail. The *Bagley* test, however, requires that we determine whether the withheld information probably would have caused the jury to reach a different result. Here, we do not believe that it would have.

## III. PRETRIAL PUBLICITY

Orsini also contends that she was denied her constitutional right to a fair trial as a result of pretrial publicity generated by the state and that the trial court erred by denying her motion for a change of venue. In particular, she points to the intentional release of Hall's August 29th statement. While we cannot be certain whether the prosecutor's office or the sheriff's office released Hall's statement, our review of the record indicates that it probably was the sheriff's office. It also appears that the purpose of this release was to pressure the prosecutor's office to indict William McArthur, the victim's husband and Orsini's attorney at the time of the murder. The underlying purpose, however, is irrelevant. The impact on Orsini of the pretrial publicity is the same.

■ Because this case involved violence, politics, and sex, it generated tremendous

publicity. The magistrate found that the facts of this case were "more highly publicized than any other criminal trial in recent Arkansas history." *Orsini v. Wallace*, No. 86–585, slip op. at 38 (E.D.Ark. Sept. 16, 1988). The determinative inquiry is not, however, the amount of publicity but rather the effect that the publicity had on prospective jurors. *See, e.g., Clark v. Wood*, 823 F.2d 1241, 1244 (8th Cir.1987). An appellate court reviewing for error asks whether the jurors can, despite the publicity, lay aside their impressions and opinions and render a verdict, in all fairness, based on the evidence presented at trial. *See Murphy v. Florida*, 421 U.S. 794, 800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975); *Clark v. Wood*, 823 F.2d at 1244.

■ Orsini raised these contentions on direct appeal to the Arkansas Supreme Court. That court rejected them. *Orsini v. State*, 665 S.W.2d at 250–51 (citing *Singleton v. State*, 274 Ark. 126, 623 S.W.2d 180 (1981); *Conley v. State*, 270 Ark. 886, 607 S.W.2d 328 (1980)). The magistrate agreed. *Orsini v. Wallace*, No. 86–585, slip op. at 38–40 nn. 40–41 (E.D.Ark. Sept. 16, 1988).

Under 28 U.S.C. § 2254(d)(8), federal court review of state court findings of fact is limited. The trial court held an evidentiary hearing. At this hearing, Orsini and the state presented evidence on whether Orsini could receive a fair trial in Pulaski County. After hearing all the evidence, the trial court concluded that Orsini could receive a fair trial.[11] Our review of the change of venue hearing indicates that the trial court's decision not to change venue is fairly supported by the record. Furthermore, Orsini presents no new evidence or theories different from those presented to the Arkansas Supreme Court and the magistrate. Both held that Orsini's right to a fair trial was not infringed by publicity. We accept that decision, albeit with some reluctance.

11. Both the state and Orsini at the change of venue hearing presented evidence on whether Orsini could receive a fair trial anywhere in the State of Arkansas in light of the fact that both Little Rock newspapers had state-wide distribution and the local television stations reached

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

■ Orsini contends that her counsel at trial and on direct appeal provided ineffective assistance. Her specific allegations are that counsel at trial did not object to the introduction of evidence concerning the bombing of the victim's car; failed to identify Winston Talley, who would have testified that Orsini was not with Hall when Hall was at Carl Wilson's home; failed to discover Hall's inconsistent statements to Terry Wolf and Dennis Montgomery that Orsini was not involved in the murder; failed to obtain information regarding Prosecutor Bentley's visit to the Arkansas Repertory Theatre to confirm Dr. Wulz' testimony that Orsini was with him the night Alice McArthur's car was bombed; failed to object to Prosecutor Bentley's presence in the courtroom even though he had assigned the case to another prosecutor; failed to object to the testimony of Gail Endleman, who testified that a woman was trying to locate the victim on the day of the murder; failed to obtain a copy of the police report containing contrary information prepared by the North Little Rock Police Department; failed to interview police officers regarding a "hit list" on which Orsini's name appeared; failed to obtain the statements of Robin Hall, Susie Peoples, and Norita Carreras that Orsini did not frequent bars with Hall; failed to obtain information regarding the special deal between Hall and Sheriff Robinson; failed to interview Dr. Wulz and Lynn Frazier regarding the performance at the theater; failed to elicit evidence regarding the immunity of Larry Burge; failed to ask Phoebe Pinkston specific questions regarding a conversation between Orsini and the victim; and were generally unprepared. She also alleges that her post-trial counsel was ineffective because he attempted to sell privileged information to a local tele-

state-wide audiences. The trial court received this evidence, but held that Orsini could receive a fair trial in Pulaski County. It specifically decided not to rely on evidence of state-wide prejudice.

vision station, allowed personal problems to interfere with his duties to Orsini, lied to her, did not consult with her about certain decisions, failed to seek disqualification of two Arkansas Supreme Court Justices, misinformed her about the procedure for raising on appeal the issue of recanted trial testimony, and failed to obtain inconsistent statements of Hall and Carl Wilson.

Orsini raised many, if not all, of these allegations at her proceeding for post-conviction relief, pursuant to A.R.Cr.P. Rule 37. The Arkansas Supreme Court denied her request for an evidentiary hearing. *Orsini v. State,* 287 Ark. 456, 701 S.W.2d 114, 119 (1985). It found no merit to any of her claims. *Id.* "None of the many points raised by the petitioner would void her conviction. Petitioner has also failed to establish that her counsel at trial or on appeal were ineffective." *Id.*

The magistrate reached and denied each of these allegations individually. *Orsini v. Wallace,* No. 86–585, slip op. at 44–58 (E.D. Ark. Sept. 16, 1988). In concluding, the magistrate found that her counsel at trial and on direct appeal were *not* ineffective. *Id.* at 58.

Our review of the record indicates that Orsini's counsel were not ineffective for the reasons stated in the magistrate's opinion. In each of her allegations, Orsini fails to demonstrate the path or direction that "reasonable" counsel would have taken. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). While she alleges which path she would have taken, she fails to give any explanation as to why "reasonable" counsel would have taken the same path. Thus, she does not overcome the presumption of reasonableness given to tactical decisions of counsel. Furthermore, we believe that she has not shown the requisite prejudice. *See id.* She has failed to assert any evidence or theory upon which we could find that conduct of her counsel undermined confidence in the outcome of her trial, sentencing, or appeal. *See Chambers v. Armontrout,* 907 F.2d 825, 832–33 (8th Cir. 1990).

## V. CONCLUSION

The magistrate's denial of Orsini's petition for habeas relief is affirmed. Because the evidence wrongly withheld by the state would not have been "material" in light of the standard set forth in *Bagley,* she was not denied due process. Likewise, pretrial publicity did not deny Orsini's right to a fair trial, and she did not receive ineffective assistance of counsel. Finally, the magistrate had jurisdiction to enter final judgment in Orsini's habeas petition.

BRIGHT, Senior Circuit Judge, dissenting.

I agree with the majority that the Federal Magistrates Act empowers magistrates to enter judgment in habeas cases with the consent of the parties. Unlike the majority, however, I would reach the issue of whether Orsini validly consented to the magistrate's jurisdiction. Having reached the issue, I would hold that Orsini's signature on the consent form, without more, did not constitute valid consent. Accordingly, I would remand to the district court and direct the court to consider Orsini's claims more fully on remand.

### I.

While as a general rule this court will not consider issues not raised prior to appeal, we need not and should not adhere to the rule in this case. In *Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976), the Supreme Court stated:

The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases. We announce no general rule. Certainly there are circumstances in which a federal appellate court is justified in resolving an issue not passed on below....

*See also Pfoutz v. State Farm Mut. Auto. Ins. Co.,* 861 F.2d 527, 530 n. 3 (8th Cir. 1988).

The circumstances of this case justify consideration of Orsini's argument that her

consent to the magistrate's jurisdiction was invalid. Orsini filed this habeas petition pro se along with a request to proceed in forma pauperis. Shortly thereafter, the clerk's office referred the petition to a magistrate. The magistrate's docket coordinator then sent a letter to Orsini giving notice of the magistrate's consent jurisdiction and enclosing Consent Form A. Orsini signed the consent form without consulting a lawyer and returned it to the clerk's office. The magistrate denied the petition and entered judgment against Orsini. Orsini appealed directly to this court.

This court granted Orsini's motion to represent herself on appeal, but appointed counsel to file an amicus brief. Neither Orsini nor amicus counsel raised the issue of the lack of consent. After oral argument, this court sua sponte raised the issue of the magistrate's jurisdiction and appointed new counsel to brief the issue. This second appointed counsel raised the validity of the consent for the first time.

Present counsel for Orsini concedes that, in general, the magistrate has jurisdiction to enter final judgment in a habeas case, but asserts that due process requires more than just Orsini's uncounselled execution of a consent form to constitute valid waiver of the right to proceed before the district court. The majority rules that Orsini waived any defects in the consent by failing to raise the issue earlier.

But Orsini had no real opportunity to raise the issue earlier. She did not have legal counsel, except for amicus counsel,[1] until this court appointed counsel to brief the issue of the magistrate's jurisdiction. Moreover, neither the district court, the magistrate nor defense counsel bothered to ascertain whether she understood that she had a right to proceed before the district court.

Until the second appointed counsel raised the issue, Orsini did not know that she had waived her right and therefore could not assert this claim. Thus, on the unusual facts of this case, the general rule about issues not raised below automatically transforms Orsini's lack of valid consent into waiver of her right to an appeal on the issue.

The question presented is an important one in federal law which will likely arise again with other habeas petitioners. Therefore, notwithstanding the general rule, I would reach the validity of Orsini's consent.

Having reached the issue, I would rule that consent to the magistrate's jurisdiction requires more than the unexplained signature of an uncounselled habeas petitioner. Constitutional considerations and the statute itself compel this result.

The statute provides:

(c) Notwithstanding any provision of law to the contrary—

. . . .

(2) If a magistrate is designated to exercise civil jurisdiction under paragraph (1) of this subsection, the clerk of court shall, at the time the action is filed, notify the parties of their right to consent to the exercise of such jurisdiction. The decision of the parties shall be communicated to the clerk of court. Thereafter, neither the district judge nor the magistrate shall attempt to persuade or induce any party to consent to reference of any civil matter to a magistrate. *Rules of court for the reference of civil matters to magistrates shall include procedures to protect the voluntariness of the parties' consent.*

28 U.S.C. § 636(c)(2) (1988) (emphasis added).

The statutory language "procedures to protect the voluntariness of the parties'

---

**1.** Orsini should not be bound by the failure of amicus counsel to raise the lack of consent issue. Counsel apparently did little independent research. Indeed, the brief consists almost entirely of passages taken verbatim from the magistrate's memorandum opinion. Moreover, counsel adopted Orsini's statement of issues presented for review. Amicus Brief at 6. In light of counsel's reliance on the memorandum opinion and Orsini's statement of the issues, it is not surprising that counsel failed to raise an issue not presented before the magistrate. The brief of amicus counsel should not deprive Orsini of her right to an appeal on the issue of lack of consent.

consent" suggests something more than written or oral assent to the magistrate's jurisdiction. Moreover, this statutory command should be applied most rigidly when the litigant is a habeas petitioner, because the personal liberty of the petitioner is at stake.[2]

18 U.S.C. § 3401 (1988), which governs the magistrate's consent jurisdiction over minor crimes, provides an appropriate model of the type of procedure that should be followed to obtain a habeas petitioner's consent to proceed before a magistrate. Section 3401(b) states:

> The magistrate shall carefully explain to the defendant that he has a right to trial, judgment, and sentencing by a judge of the district court and that he may have a right to trial by jury before a district judge or magistrate. The magistrate shall not proceed to try the case unless the defendant, after such explanation, files a written consent to be tried before the magistrate that specifically waives trial, judgment, and sentencing by a judge of the district court.

A similar formulation for habeas petitioners would accord well with the purposes of the statute and eliminate constitutional concerns about involuntary waiver of rights.

Article III "serves both to protect 'the role of the independent judiciary within the constitutional scheme of tripartite government,' and to safeguard litigants' 'right to have claims decided before judges who are free from potential domination by other branches of government.'" *Commodity Futures Trading Comm'n v. Schor,* 478

U.S. 833, 848, 106 S.Ct. 3245, 3255, 92 L.Ed.2d 675 (1986) (citations omitted). Individual litigants thus have a right to Article III adjudication of lawsuits. *Id. See also Pacemaker Diagnostic Clinic of America v. Instromedix,* 725 F.2d 537, 541 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984).

While the right to appear before an Article III judge may be waived, *Schor,* 478 U.S. at 848–49, 106 S.Ct. at 3255–56, the waiver of any constitutional right must be voluntary, knowing and intelligent, *Brady v. United States,* 397 U.S. 742, 749, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970). The last sentence of section 636(c)(2) calls for procedures designed to implement this constitutional command.

The language of the statute and constitutional considerations thus mandate procedures designed to insure the voluntariness of consent to the magistrate's jurisdiction. No such procedures are provided for in the local rules of court for the Eastern District of Arkansas[3] and none were followed in this case.

Accordingly, I conclude that the magistrate did not have jurisdiction to enter final judgment. I would remand to the district court with directions to treat the magistrate's opinion as a recommended disposition.

## II.

It is apparent from reading the magistrate's opinion and the record in this case that Orsini's trial in the state court was anything but a model of fairness.

---

**2.** I express no opinion about the procedures required under section 636(c)(2) for litigants other than habeas corpus petitioners.

**3.** Section X of local rule 23 of the Eastern District of Arkansas provides:

CIVIL CONSENT JURISDICTION

A. *Special Designation*

The full-time Magistrates of both districts are specially designated by the District Court to conduct any or all proceedings in jury or non-jury civil matters upon the consent of the parties.

B. *Reference*

1. Notice. The Clerk shall give the plaintiff notice of the Magistrate's consent jurisdiction,

in a form approved by the Court, when a civil suit is filed. The Clerk shall also attach the same notice to the summons for service on the defendant.

2. Consent. Any party may obtain a "Consent to Magistrate's Jurisdiction" form from the Clerk's office.

Unless specifically requested by the party seeking the Consent form, the Clerk shall furnish the party with Consent Form A, which shall provide that any appeal in the case shall be taken directly to the Circuit Court of Appeals. The Clerk will also have available Consent Form B, which shall provide for any appeal in the case to be taken to the District Court.

As noted by the majority, shortly before the trial either the prosecution or the defense deliberately leaked to the press Yankee Hall's statement implicating Orsini in the murder. This statement combined with extensive publicity about the unsolved murder of Orsini's husband (Orsini was the number one suspect)[4] and contributed to a flood of publicity making it extremely difficult for Orsini to obtain a fair trial in Pulaski County. Indeed, the magistrate characterized the events leading to Orsini's conviction as "more highly publicized than any other criminal trial in recent Arkansas history." Memorandum Opinion at 38. Nevertheless, the trial court denied Orsini's motions for a change of venue and for a continuance.

With respect to Orsini's ineffective assistance of counsel claim, Orsini's trial attorney admitted under oath that he had not interviewed any of the prosecution's witnesses. Memorandum Opinion at 54. This admission lends powerful support to Orsini's numerous other allegations of ineffective assistance of counsel at trial.

The most serious of Orsini's claims concern the prosecution's actions in withholding numerous highly relevant pieces of evidence from the defense. As the majority notes, among other things, the prosecution withheld the statement of its principal witness, Yankee Hall, that he barely knew Orsini and that she had nothing to do with the murder. At trial, Hall testified directly to the contrary. The magistrate determined that the prosecution's deliberate withholding of this statement did not prejudice Orsini.

Orsini asserts that the prosecution withheld details of a deal Sheriff Tommy Robinson struck with Yankee Hall. According to Orsini, Hall agreed to recant his original story and implicate Orsini. Again, the magistrate ruled that the prosecution's withholding of this evidence did not prejudice Orsini.

These are just some of the incidents and allegations strongly supporting Orsini's claims that the prosecutor and the sheriff deprived her of a fair trial. Orsini presented the merits of her petition to the magistrate and to this court without the assistance of counsel.[5] Given these circumstances and the deliberate nature of the prosecutor's and sheriff's actions, I would direct the district court to consider the substance of Orsini's claims more fully on remand and to open the record for additional evidence.

In particular, I would direct the district court to examine the facts surrounding the deliberate acts of withholding evidence and leaking information to the press on the part of the prosecution and Sheriff Tommy Robinson. In addition, I would permit the petitioner the opportunity to call Sheriff Robinson to the stand to testify about his knowledge of the deal struck with Hall and other alleged unlawful acts on his part. I recognize that he no longer holds the position of Sheriff and that he now serves as a Congressman from Arkansas. Nevertheless, Orsini's liberty hangs in the balance and Sheriff Robinson's conduct is highly relevant to the issues presented.

I dissent.

---

4. Following Orsini's conviction for the murder of Alice McArthur, the state tried and convicted her of the murder of her own husband. Memorandum Opinion at 36. The Arkansas Supreme Court subsequently overturned that conviction. *Orsini v. State,* 286 Ark. 283, 691 S.W.2d 175 (1985).

5. As noted earlier, the brief of amicus counsel added nothing to Orsini's presentation of the issues and the second appointed counsel addressed only the issue of the magistrate's jurisdiction.