**Robert Lee NORRIS, Petitioner–Appellant,**

v.

**James SCHOTTEN, Warden, Respondent–Appellee.**

**No. 96–3553.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 21, 1997.

Decided May 26, 1998.

---

Timothy A. Smith (argued and briefed), Cincinnati, OH, for Petitioner–Appellant.

Michael L. Collyer (argued and briefed), Office of the Attorney General of Ohio, Capital Crimes Section, Cleveland, OH, for Respondent–Appellee.

Before: MERRITT, MOORE, and BRIGHT,* Circuit Judges.

---

\* The Honorable Myron H. Bright, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

MOORE, J., delivered the opinion of the court, in which MERRITT, J., joined. BRIGHT, J. (p. 336), delivered a separate concurring opinion.

MOORE, Circuit Judge.

In September 1992, petitioner-appellant Robert Lee Norris was convicted in the state of Ohio of two counts of rape and one count of kidnapping. Norris now appeals the district court's denial of his petition for a writ of habeas corpus to overturn two of the three convictions on one count of rape and one count of kidnapping.[1] For the reasons set forth below, we affirm the district court's judgment and deny appellant's request for habeas relief.

## I. FACTUAL & PROCEDURAL BACKGROUND

For purposes of this appeal, we need only briefly recount the evidence upon which appellant was convicted of Counts One (kidnapping) and Two (rape). The following facts are derived from various testimony that was given during the state court criminal proceedings against appellant (Stark County Tr. Vol. 3 for 7/21/93):

Sheila Knutty was sixteen years old when she first met appellant while walking down a street with a friend. Appellant asked Sheila to braid his hair, and while she did, he talked to her about his daughter who was a classmate of Sheila's. Sheila ran into appellant only one other time before the crime occurred on October 15, 1992. S. Knutty Test. at 48–49, 52; Appellant's Br. at 16.

On October 15, 1992, appellant called Sheila to ask her to help him and his girlfriend Kimberly Southall plan a birthday party for his daughter. Sheila agreed to help. In order to leave the house, Sheila falsely told her parents that she was going out with her girlfriend Raquell and Raquell's mother. Sheila met appellant and Southall at a nearby gas station, and the trio eventually drove to appellant's

---

1. These counts involve one victim (Sheila Knutty); Count Three involves a different victim (Janet Homan). Counts One and Two were severed from Count Three for trial in state court.

house. J.A. at 840–43 (S. Knutty Test. at 52–55).

When Sheila came out of the bathroom at appellant's house, appellant asked her to come into Southall's bedroom. Appellant told her that he was going to take pictures of her. When Sheila tried to leave, appellant threw her down on the bed. He then began to smoke crack cocaine. Sheila again tried to leave, but appellant again pushed her down on the bed, brandished a pair of scissors, and told her that she was going to do what he wanted her to. At this time, the door to the bedroom was locked. S. Knutty Test. at 56–59.

Appellant forced Sheila to smoke crack by covering her mouth and nose with his hands. Holding the scissors to her neck, he made her put on a pair of shorts and a tee shirt and imitate poses from a magazine. Appellant then tied Sheila's hands with yarn and began touching her chest and vagina. Appellant repeatedly forced Sheila to engage in vaginal intercourse with him and, holding the scissors to her neck, also forced her to perform oral sex on him. Southall came into the room after going out to buy more crack, and at appellant's demand touched Sheila's vagina and performed oral sex on her. Southall later fell asleep in the room, and appellant again repeatedly forced Sheila to engage in sexual conduct with him. At one point, appellant untied Sheila but then cut her chest with the scissors when she began screaming. S. Knutty Test. at 60–68.

Appellant eventually agreed to release Sheila. He took her to Sheila's friend's house, and Sheila immediately went to a hospital. S. Knutty Test. at 69–70.

Norris was sentenced to an indefinite term of incarceration of fifteen to twenty-five years on each of the two counts, to be served consecutively. J.A. at 155 (Found Guilty By Jury and Sentence Imposed Sept. 10, 1993) (Ex. B–1), 162 (J. Entry Nunc Pro Tunc as of Dec. 27, 1993) (Ex. B–2), 166 (J. Entry Nunc Pro Tunc as of Aug. 30, 1995) (Ex. B–3). Upon exhaustion of all available state remedies, *see* J.A. at 832 (Ohio Supreme Ct. Entry of Judgment, Case No. 95–448) (Ex. M–1), a habeas petition asserting twelve grounds for relief was filed on July 17, 1995 pursuant to 28 U.S.C. § 2254. All parties involved signed a consent form agreeing to allow a magistrate judge to conduct all proceedings and to render a final decision with respect to appellant's petition. J.A. at 837 (Order of Reference, dated Apr. 24, 1996). The magistrate judge ultimately ordered entry of final judgment denying appellant's petition for federal habeas relief, and appellant appealed. The district court had original jurisdiction pursuant to 28 U.S.C. §§ 2254(a), 636(c)(1) to review a habeas petition filed by a state prisoner.

A certificate of probable cause was issued by the district court on May 6, 1996 allowing appellant's appeal to the Sixth Circuit to go forward. Believing the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applied, a panel of this court issued an order on August 16, 1996 granting appellant a certificate of appealability limiting, as required under 28 U.S.C. § 2253 as amended by AEDPA, *those particular issues* which were appealable to this court. *See Norris v. Schotten,* Nos. 96–3536/3553, 1996 WL 469158, Order, at 2(Aug.16, 1996). This order approved three issues for appeal and provided for appointment of counsel. *See id.* However, it then became clear, under the Supreme Court's subsequent decision in *Lindh v. Murphy,* —— U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), that AEDPA's changes to 28 U.S.C. § 2253 only apply to those petitioners who file their habeas petitions after the act's effective date of April 24, 1996. *See id.* at 2068. Since appellant had filed his petition for writ of habeas corpus on July 17, 1995, almost a year before the enactment of AEDPA, the requirement of obtaining a certificate of appealability was, in actuality, never applicable to appellant. *See Arredondo v. United States,* 120 F.3d 639, 640 (6th Cir.1997).

In the pre-AEDPA world, state prisoners who were denied a writ of habeas corpus from the district court were required to obtain a certificate of probable cause from either the "justice or judge who rendered the [final] order or a circuit justice or judge" before an appeal could be taken to the court of appeals. 28 U.S.C. § 2253 (1994). More

important, this court has held that "the grant of [a] certificate of probable cause by the district court, *in spite of [any] limiting provision*, brings before [the court of appeals] the final judgment for review in *all* respects." *Houston v. Mintzes*, 722 F.2d 290, 293 (6th Cir.1983) (emphasis added). Thus, in stark contrast to the rules prescribed under AEDPA which require an itemization of appealable issues, in the pre-AEDPA context the court could not pick and choose which issues to review.

Based on this reasoning, this court granted appellant's pro se motion requesting that this court review all of the issues presented to the district court, *see* Appellant's Notice of Non–Waiver of Former Standard of and for Appellate Review, No. 96–3553 (July 9, 1997), and permitted supplemental briefing from both appellant's appointed counsel and the government on the nine remaining issues not already presented to this court pursuant to the certificate of appealability.[2] J.A. at 11 (Pet. for Writ of Habeas Corpus, filed July 17, 1995); *Norris v. Schotten*, No. 96–3553, Order, at 2 (Oct. 27, 1997). The Seventh Circuit faced a nearly identical situation in *Koo v. McBride*, 124 F.3d 869 (7th Cir.1997). Under its pre-AEDPA precedents, "a district court's limitation on a certificate of probable cause [similarly] ha[d] no legal effect on the scope of the appeal." *Id.* at 872 (citing *Smith v. Chrans*, 836 F.2d 1076 (7th Cir. 1988), for this holding). The Seventh Circuit concluded that it was thus bound to apply the pre-AEDPA law and to review not only those issues specified in the certificate of appealability but also those other matters presented by the appellant to the district court. This court is obligated to do the same.

With the supplemental briefing in hand,[3] we now proceed to review the merits of the thirteen grounds raised by appellant for habeas relief. This court has appellate jurisdiction pursuant to 28 U.S.C. §§ 2253,[4] 1291, 636(c)(3) over the district court's final judgment.

## II. ANALYSIS

 Upon petitioner's exhaustion of available state remedies, a federal court may issue a writ of habeas corpus to correct a state trial or other proceeding that has placed the petitioner in state confinement if the state proceeding was rendered fundamentally unfair by a violation of the Constitution, the laws, or the treaties of the United States. *See Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir.1994); 28 U.S.C. § 2254(a). In general, such a writ will not be issued unless actual prejudice is shown. *See Clemmons*, 34 F.3d at 354.

 Pursuant to *Lindh*, the grounds for relief asserted by appellant will be evaluated by this court under the pre-AEDPA standards of review. *See Lindh*, ─── U.S. at ───, 117 S.Ct. at 2068. Thus, this court will review the district court's denial of habeas corpus relief de novo, but any findings of fact made by the district court will be reviewed for clear error. *See Moore v. Carlton*, 74 F.3d 689, 690 (6th Cir.1996), *cert. denied*, 516 U.S. 1183, 116 S.Ct. 1287, 134 L.Ed.2d 231 (1996). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (quotation omitted). The fact that a magistrate judge rather than a district judge entered final judgment in this case does not alter our standards of review. *See McGraw v. Connelly (In re Bell & Beckwith)*, 838 F.2d 844, 848

---

**2.** While two of the three issues initially certified for appeal by this court were among the twelve raised in appellant's petition, the first issue dealing with subject matter jurisdiction was raised by the Sixth Circuit panel sua sponte.

**3.** Norris submitted a pro-se supplemental brief augmenting a pro-se brief he filed previously with this court. While both appellant's counsel and appellee requested and were granted extensions in order to comply with our request for additional briefing, appellant's counsel ultimately came to the conclusion that he had nothing further to add, and appellee has similarly declined to submit any additional materials.

**4.** Under the post-AEDPA United States Code, the proper citation would be § 2253(a).

n. 5 (6th Cir.1988). Findings of fact made by a state court must be given complete deference if supported by the evidence. *See Clemmons,* 34 F.3d at 354; 28 U.S.C. § 2254(d) (1994).

## A. Constitutionality of Section 636(c) of the Magistrates Act in the Habeas Setting

 The first issue before this court, pertaining to the constitutionality of § 636(c) of the Federal Magistrates Act, was raised sua sponte by the panel of this circuit that granted appellant a certificate of appealability.[5] Section 636(c) of the Federal Magistrates Act provides, in pertinent part:

(c) Notwithstanding any provision of law to the contrary—

(1) Upon the consent of the parties, a full-time United States magistrate ... may conduct any or all proceedings in a jury or nonjury *civil* matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves.

28 U.S.C. § 636(c)(1) (emphasis added). Appellant acknowledges that this court, along with all eleven other circuits, has upheld the constitutionality of 28 U.S.C. § 636(c), rejecting the proposition that this provision "improperly confers the judicial power of the United States as exercised under Article III of the Constitution on an Article I court...." *K.M.C. Co. v. Irving Trust Co.,* 757 F.2d 752, 755 (6th Cir.1985); *see Orsini v. Wallace,* 913 F.2d 474, 478 (8th Cir.1990), *cert. denied,* 498 U.S. 1128, 111 S.Ct. 1093, 112 L.Ed.2d 1197 (1991). However, appellant maintains that this holding does not and should not extend to the habeas context, which he claims is distinguishable from the typical civil action. Appellant suggests that Congress did not intend for non-Article III judges to decide habeas cases. Appellant's Br. at 8.

Although the Sixth Circuit has not yet addressed this particular issue, we find some guidance in the opinions of two other circuits which have—the Eighth and the Eleventh.

We begin by noting that nothing in our opinion in *K.M.C. Co.* suggests that the holding in that case was intended to be limited to civil, non-habeas proceedings, and in terms of plain language § 636(c) does seem to confer upon magistrate judges the statutory authority to render final judgments even in habeas proceedings. We also agree with the Eighth Circuit in *Orsini* that the legislative history of § 636(c) suggests such an intention. As recounted by the Eighth Circuit, Congress in 1976 passed section 636(b)(1)(B) with the language "[n]otwithstanding any provision of law to the contrary" in order to neutralize any problems district courts might encounter designating magistrate judges to perform various functions by virtue of the Supreme Court's holding in *Wingo v. Wedding,* 418 U.S. 461, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974), that 28 U.S.C. § 2241(a) vested the power to grant habeas corpus relief only in Article III judges and not magistrate judges because of its reference to "the judge" or "the court." *See Orsini,* 913 F.2d at 477 (citing H.R.Rep. No. 94–1609, at 9 (1976), reprinted in 1976 U.S.C.C.A.N. 6162, 6169); *see also A Constitutional Analysis of Magistrate Judge Authority,* 150 F.R.D. 247, 255 & n. 8 (1993) (citing S.Rep. No. 94–625, at 3 (1976)) [hereinafter *Analysis* ]. The Eighth Circuit observed that § 636(c) similarly begins with the "[n]otwithstanding any provision of law to the contrary" language and concluded that Congress had had a similar intention with respect to § 636(c). *See Orsini,* 913 F.2d at 477; 28 U.S.C. § 636(c).

Perhaps even more compelling is the second factor relied on by the Eighth Circuit. When the Federal Magistrates Act was amended in 1976 to allow magistrate judges to conduct evidentiary hearings in habeas corpus cases, the 1976 Advisory Committee Note to Rule 10 of the Rules Governing Section 2254 Cases in United States District Courts acknowledged that " 'neither 28 U.S.C.S. § 636(b) nor this rule contemplate the abdication by the court of its decision-making responsibility.' " Scott M. Smith, *Criminal jurisdiction of magistrate under*

---

**5.** Subject matter jurisdiction is an issue that must be raised sua sponte by a federal court where appropriate and can be raised at any time. *See Mickler v. Nimishillen & Tuscarawas Ry. Co.,* 13 F.3d 184, 189 (6th Cir.1993), *cert. denied,* 511 U.S. 1084, 114 S.Ct. 1835, 128 L.Ed.2d 463 (1994); *Franzel v. Kerr Mfg. Co.,* 959 F.2d 628, 630 & n. 1 (6th Cir.1992).

*Federal Magistrates Act of 1968 (28 U.S.C.S. §§ 631 et seq.)*, 127 A.L.R. FED. 309, 393–94 (1995) (quoting 1976 Advisory Committee Note to Rule 10). However, after the 1979 amendments to the Federal Magistrates Act adding § 636(c), the Supreme Court amended Rule 10 "to provide a generic grant of authority: 'The duties imposed on the judge of the district court by these rules may be performed by a United States magistrate pursuant to 28 U.S.C. § 636.'" *Orsini*, 913 F.2d at 477 (quoting Rule 10 as amended in 1979).

█ While appellants are correct that habeas proceedings are not treated like the typical civil action in every context, both circuits that have confronted this issue have concluded that such a distinction is irrelevant to determining the constitutionality of § 636(c), and we agree. The Eighth Circuit held that the exercise of jurisdiction by a magistrate judge in a habeas proceeding pursuant to § 636(c) does comport with the requirements of Article III of the Constitution. This holding was based partially on its determination that the petitioner's contention that federal habeas relief demanded an independent decisionmaker related to due process concerns and not the traditional Article III concerns of separation of powers. *See id.* at 479 n. 8. While we disagree slightly with the Eighth Circuit's reasoning, we reach the same conclusion. We believe it is more accurate to view the separation of powers concern of section 1 of Article III [6] as encompassing at least two elements: "(1) the 'structural' interest of maintaining an 'independent judiciary within the constitutional scheme of tripartite government,' and (2) the 'personal' interest of individual litigants in preserving their 'right to have claims decided before judges who are free from potential domination by other branches of government.'" *See*

*Analysis*, 150 F.R.D. at 282 (quoting *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 848, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986) (internal quotations omitted)); *Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc.*, 725 F.2d 537, 541 (9th Cir.1984) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984). In analyzing whether a distinction should be made between habeas proceedings and other civil proceedings in allowing a non-Article III judge to render a final decision, only the latter, personal interest is relevant.[7] In the instant case, appellant has argued that habeas proceedings should be distinguished from the typical civil action for purposes of § 636(c) because of the heavy impact habeas relief has on personal freedom. Appellant's Br. at 7. Yet, unlike the structural interest, an individual's right to an impartial and independent tribunal is subject to waiver like any other fundamental, personal right guaranteed by the Constitution. *See Schor*, 478 U.S. at 848–49, 106 S.Ct. 3245. Thus, since § 636(c) requires valid consent from all parties, we see no constitutional infirmity with allowing a magistrate judge to render a final decision in a habeas proceeding under § 636(c).

The Eleventh Circuit in *Sinclair v. Wainwright*, 814 F.2d 1516 (11th Cir.1987), similarly placed much importance in the requirement of consent from all parties. It noted two factors for its conclusion that the entry of final judgment under § 636(c) by a magistrate judge in a habeas case does not offend Article III:(1) consent is required, and (2) the district court retains some control over the magistrate judge. *Id.* at 1519. Jurisdiction under § 636(c) can only be exercised by a magistrate judge upon special designation by the district court, and it remains subject to

---

**6.** Section 1 of Article III states that:

The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behavior, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office.

U.S. CONST. art. III, § 1.

**7.** There is no logical reason to think that giving non-Article III judges the authority to render final decisions in habeas proceedings implicates the structural interest any more than doing so would in the context of non-habeas civil actions. As mentioned earlier, whether the structural interest is compromised by allowing a magistrate judge to render final decisions in civil actions has already been settled in this circuit. *See K.M.C. Co.*, 757 F.2d at 755.

appellate review. *See* 28 U.S.C. § 636(c)(3). A district judge also retains the power to vacate the reference. *See* 28 U.S.C. § 636(c)(6) (1994).[8] Furthermore, in notifying parties of the availability of a magistrate judge to render a final judgment, the parties must also be advised that "they are free to withhold consent without adverse substantive consequences." 28 U.S.C. § 636(c)(2).

As a last attempt, appellant argues that even if § 636(c) in the habeas context does not violate Article III, his own waiver cannot be considered knowing and intelligent because he was uncounseled at the time he gave his written consent. The record must show that the known right or privilege was waived by voluntary, knowing, and intelligent action. *See Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Martin v. Rose*, 744 F.2d 1245, 1251 (6th Cir.1984). However, such action does not require that one always be represented by counsel. Rather, this determination should be made by examining the "particular facts and circumstances surrounding [a] case, including the background, experience, and conduct of the accused." *Zerbst*, 304 U.S. at 464, 58 S.Ct. 1019. The particular facts and circumstances of the instant case lead us to conclude that appellant's claim is without merit. This case does not involve an inexperienced habeas petitioner. This was the second time that appellant had come before the district court seeking a writ of habeas corpus, the first petition having been dismissed without prejudice by a district judge for failure to exhaust state remedies. At that time, appellant was also offered the opportunity to sign a waiver form and to consent to a magistrate judge's final judgment, but appellant declined. Thus, it is difficult for us to believe that appellant did not knowingly waive his right to have a district judge decide his second petition. He was fully aware that he

had such a right given his prior experience with the district court in an identical situation.

For the foregoing reasons, this court will follow the lead of the Eighth and Eleventh Circuits[9] and hold that the entry of a final judgment by a magistrate judge pursuant to § 636(c) does not violate Article III of the Constitution, even in a habeas setting. Under the particular circumstances of the present case, appellant has also failed to show that his consent should be considered invalid; we have every reason to believe that he voluntarily, knowingly, and intelligently waived his right to have an Article III judge render a final decision with respect to his habeas petition.

## B. Sixth Amendment Right to a Speedy Trial

Norris's second claim is that he is entitled to federal habeas relief because his conviction was obtained in violation of his Sixth Amendment right to a speedy trial. *See* U.S. CONST. Amend. VI. A four-factor balancing test has been established by the Supreme Court to determine whether there has been a violation of an accused's constitutional right to a speedy trial. These factors are: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *See Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *United States v. White*, 985 F.2d 271, 275 (6th Cir.1993). An evaluation of these factors in the present context leads us to conclude that appellant's Sixth Amendment claim does not provide a basis for granting federal habeas relief.

The length of the delay can generally be considered a triggering mechanism. *See Barker*, 407 U.S. at 530, 92 S.Ct. 2182. Thus, our first inquiry is whether there was a presumptively prejudicial delay to warrant

---

**8.** We note that, pursuant to the 1997 amendments, this provision is now located at 28 U.S.C. § 636(c)(4).

**9.** The Fourth, Tenth, and Ninth Circuits have suggested in dicta that magistrate judges pursuant to § 636(c) can properly enter final judgment

in habeas proceedings. *See United States v. Bryson*, 981 F.2d 720, 724 (4th Cir.1992); *Watkins v. Champion*, 39 F.3d 273, 274 & n. 2 (10th Cir. 1994); *President v. United States Parole Comm'n*, No. 93–35938, 1994 WL 155268, at *1 (9th Cir. Apr.28, 1994) (unpublished decision).

further investigation of the *Barker* factors. For purposes of our analysis, we will assume, as Norris contends, that he was detained for 256 days [10] until his trial on the two counts relating to Sheila Knutty commenced on July 19, 1993. Appellant's Pro Se Br. at 8; Stark County Ct. Tr. Vol. 1 for 7/19/93 at 1. Since at least fourteen days [11] in January 1993 can be attributed to appellant's own actions—the filing of ten motions, "including a motion for recusal of the trial judge, a motion to suppress, four motions to dismiss, a motion to produce, two notices of appeal, and an emergency motion for injunctive relief," the actual delay was at most 242 days (approximately eight months). J.A. at 735 (Ohio Ct. of Appeals Op. at 7); *see also Martin*, 744 F.2d at 1252 (citing *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) (noting that under 28 U.S.C. § 2254(d) (1994), a federal court of appeals must apply a presumption of correctness to state appellate court's factual findings)); Appellant's Pro Se Supplemental Br. at 2–5 (arguing that state appellate court finding that fourteen days is attributable to appellant is to be accorded a presumption of correctness). In *Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), the Supreme Court noted that, in general, a delay that approaches one year is considered presumptively prejudicial, depending on the nature and seriousness of the charges. *Id.* at 652 n. 1, 112 S.Ct. 2686. In *White*, this court determined that a six-and-one-half month delay in trying defendants accused of attempted possession of cocaine with intent to distribute and using and carrying a firearm in connection with drug trafficking was not presumptively prejudicial. *See White*, 985 F.2d at 275. Although the delay here does not approach one year and the offense for which appellant was being detained was extremely serious, in the interest of fairness we will presume the delay of eight months to be prejudicial and proceed to examine the remaining factors.

In the present situation, the reasons for the eight-month delay stemmed both from problems that arose as a consequence of uncontrollable circumstances as well as from problems directly attributable to Norris himself. The record indicates that in February 1993, appellant filed a motion for disqualification of the second trial judge [12] appointed to the case. J.A. at 174 (Stark County Trial Docket). By the end of February 1993, the Ohio Supreme Court had stayed the proceedings in this case pending a ruling from the Chief Justice with respect to appellant's request to disqualify the trial judge which was ultimately denied sometime around June 11, 1993. J.A. at 174 (Stark County Trial Docket); Stark County Tr. for 6/16/93 at 3. Within a week of this ruling appellant was ordered to undergo an evaluation to determine his competency to stand trial, and the trial followed approximately one month later, but not before appellant filed a motion for change in venue and commenced an action in federal court wherein his counsel was named as a defendant forcing another change in counsel. J.A. at 174–75 (Stark County Trial Docket); Stark County Ct. Tr. for 6/16/93 at 4–5, 15, 24. In fact, the Ohio Court of Appeals found that five different attorneys were appointed to handle appellant's case before the case ultimately went to trial. J.A. at 736 (Ohio Ct. of Appeals Op. at 8). At times, new counsel needed to be appointed because of conflicts of interest that arose as a matter of circumstance; in other instances, the need to appoint new counsel was directly linked to actions of the appellant as in the case mentioned above. Moreover, there is no evidence in the record to suggest that any part

**10.** The record suggests that appellant was arrested on November 3, 1992 and indicted on November 12, 1992.

**11.** Appellant asserts that the Ohio Court of Appeals found that "only" fourteen days of the delay could be attributed to appellant's own actions. However, the Ohio Court of Appeals never made such a finding, and such a finding cannot logically be inferred from the court's opinion. J.A. at 735 (Ohio Ct. of Appeals Op. at 7). Furthermore, the Ohio Court of Appeals was

only dealing with a statutory claim of a violation of the Ohio Speedy Trial Act and was thus focusing primarily on the period before February 1, 1993.

**12.** It seems the motion for disqualification of the first trial judge assigned to appellant's case became moot when that judge was sworn in as a judge on the Ohio Court of Appeals. J.A. at 224 (Ex. G at 8).

of the delay was intentionally caused by the prosecution or the trial court.

As for the third factor to be balanced, we agree with the district court that the transcripts of the pre-trial proceedings in state court clearly show appellant's continued preoccupation with not waiving his right to a speedy trial and his continued dissatisfaction with his counsel for agreeing to any such waiver. Stark County Ct. Tr. for 1/19/93 at 6–7; 2/10/93 at 10–12; 6/16/93 at 12–13.

However, appellant has presented no evidence suggesting that the prejudice he suffered was anything more than minimal. The Supreme Court has established that the prejudice inquiry must be determined in light of the interests of the defendant that the Sixth Amendment was intended to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532, 92 S.Ct. 2182. We begin with the last interest first since this is the most important. The only manner in which appellant has claimed his defense was impaired was his alleged inability to call witnesses. Appellant's Pro Se Br. at 18 (incorporates his Mot. for Summary J. dated Oct. 20, 1995); Mot. for Summary J., dated Oct. 20, 1995, at 9–10. However, appellant does not explain how the alleged prolonged detention affected his ability to call these witnesses. Moreover, while appellant correctly points out that in certain contexts, prejudice can be presumed, *see Doggett*, 505 U.S. at 658, 112 S.Ct. 2686, the present situation does not warrant such a presumption. In *Doggett*, the Supreme Court concluded that an affirmative showing of actual prejudice was not necessary given that the length of delay was six years—six times as long as that generally sufficient to trigger judicial review. *See Doggett*, 505 U.S. at 657–58, 112 S.Ct. 2686. Here, the delay was less than one year, and appellant was accused of two violent rapes as well as kidnapping. Finally, we acknowledge the emotional anxiety that appellant may have felt during his pre-trial incarceration as manifested by his hunger strike, but all involuntary detention will undoubtedly engender some amount of anxiety,

and given the significant role that he himself played in staying the proceedings before the trial court, we believe this anxiety was minimal.

Upon balancing the four *Barker* factors, we conclude that appellant has not shown a violation of his Sixth Amendment right to a speedy trial.

### C. Due Process in Denial of a State–Created Right to Speedy Trial

Besides a constitutional right to a speedy trial, Norris also has a statutory right to a speedy trial under OHIO REV.CODE ANN. §§ 2945.71–.73 (Banks–Baldwin 1997) which mandates that "[a] person against whom a charge of felony is pending ... be brought to trial within two hundred seventy days after his arrest" where "each day which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." OHIO REV.CODE ANN. § 2945.71(C)(2), (E) (Banks–Baldwin 1997). Where this mandate is not adhered to, "[u]pon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged...." OHIO REV.CODE ANN. § 2945.73(B) (Banks–Baldwin 1997). Appellant asserts that his statutory right to be brought to trial within ninety days of his arrest was violated and that the state court's denial of his motion to discharge on this speedy trial ground violated his Fourteenth Amendment due process rights because the trial court failed to state essential findings of fact to support its denial. Appellant's Pro Se Br. at 6.

A claim based *solely* on an error of state law is not redressable through the federal habeas process. *See McGuire*, 502 U.S. at 67–68, 112 S.Ct. 475; *Hutchison v. Marshall*, 744 F.2d 44, 46–47 (6th Cir.1984), *cert. denied*, 469 U.S. 1221, 105 S.Ct. 1208, 84 L.Ed.2d 350 (1985). It is especially inappropriate for a federal habeas court to set aside a state court's ruling on an issue of state law where, as in the present situation, Ohio's appellate courts on direct appeal have already found appellant's claim of a violation of his statutory right to a speedy trial to be meritless. J.A. at 734–37 (Ohio Ct. of Appeals Op. at 6–9) (Ex. J), 752 (Def.'s Mem. in

Supp. of Ohio Supreme Ct. Jurisdiction at 2), 832 (Ohio Supreme Ct. Denial of Leave to Appeal, No. 95–448). Although this principle does not prohibit federal habeas relief where a state court's error in interpreting or applying its own law has rendered the trial that convicted the appellant so fundamentally unfair as to have deprived appellant of substantive due process in violation of the U.S. Constitution, *see McGuire*, 502 U.S. at 67–68, 112 S.Ct. 475; *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir.1993), *cert. denied*, 510 U.S. 1201, 114 S.Ct. 1317, 127 L.Ed.2d 666 (1994), this is not our situation here. As this court concluded in *Hutchison*, the fundamental fairness principle has only been applied to pretrial proceedings where there is some effect on the fairness of the trial itself. *See Hutchison*, 744 F.2d at 47. Like the statutory speedy trial claim in *Hutchison*, the claim here "has nothing whatsoever to do with the fairness of the trial itself ... [but rather] goes to the fairness of [the petitioner's] extended pretrial detention." *Id.* Appellant has pointed to nothing that would suggest otherwise. Moreover, this is certainly not a case where the innocence of the accused is manifest. *See Olsen v. McFaul*, 843 F.2d 918, 933 (6th Cir.1988).

 We agree with appellant that any arbitrary denial of a state-created right for which there is no state remedy is also a violation of procedural due process, *see Howard v. Grinage*, 82 F.3d 1343, 1349–50 (6th Cir.1996), and we will assume that, although not mandated by the U.S. Constitution, the Ohio legislature created a liberty interest in requiring that appellant be tried within ninety days of his arrest.[13] Yet, even assuming that the state trial court acted arbitrarily and deviated from proper procedures in denying appellant's motion to discharge, any insufficiency in procedural due process was cured through the appellate review process that was available to appellant and which appellant took advantage of. *See J.A.* at 737 (Ohio Ct. of Appeals Op. at 9) (Ex. J). In requesting federal habeas relief, appellant has not claimed and offers no proof that the Ohio court system as a whole is arbitrary and

lacks a rational mechanism/process for remedying errors. Thus, we find appellant's due process argument to be unconvincing.

## D. Confrontation Clause

 The Confrontation Clause of the Sixth Amendment, as incorporated into the Due Process Clause of the Fourteenth Amendment, guarantees the right of an accused in a state criminal prosecution "to be confronted with the witnesses against him." U.S. CONST., amend. VI; *see Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). This appeal concerns that category of Confrontation Clause cases involving restrictions imposed by law or the trial court that have compromised the effectiveness of cross-examination. *See Delaware v. Fensterer*, 474 U.S. 15, 18, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985). In particular, appellant claims he was improperly prevented from asking three types of questions on cross-examination which he contends were relevant because he is African–American while Sheila is European–American. Appellant's Br. at 17. The first line of questioning pertained to the fact that Sheila's boyfriend at the time of the incident was African–American. The second related to Sheila's parents' disapproval of her relationship with an African–American. Lastly, appellant believes he should have been allowed to ask Sheila's parents why they did not want their daughter dating an African–American. All three lines of questioning were prohibited by the trial court because they were deemed irrelevant and/or too highly prejudicial. J.A. at 844–48 (Stark County Tr. Vol. 3 for 7/21/93 at 155–59).

 The right to confrontation is not absolute. Trial judges retain great discretion to impose reasonable limits on the cross-examination of witnesses based on concerns such as harassment, prejudice, confusion of the issues, the witness's safety, and marginal relevancy. *See Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *United States v. Christian*, 786 F.2d

---

**13.** We leave for another day to discuss what effect, if any, the Supreme Court's decision in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293,

132 L.Ed.2d 418 (1995), may have had on our decision in *Johnson v. Overberg*, 639 F.2d 326, 327 (6th Cir.1981).

203, 212–13 (6th Cir.1986). A trial judge abuses this discretion when "although some cross-examination of a prosecution witness [i]s allowed, the trial court d[oes] not permit defense counsel to 'expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness.'" *Fensterer*, 474 U.S. at 19, 106 S.Ct. 292.

Appellant contends that the first line of questioning would have shown that Sheila did not need to be deceived nor prompted to socialize with an African–American. Yet, we have doubts as to the relevancy of such testimony in this case. As the magistrate judge correctly pointed out, no one disputed that the appellant and the victim knew each other before the rape incident and that they were acquaintances. Furthermore, Sheila testified that she did not dislike nor distrust appellant during any of the interactions they had before the rape incident and that she voluntarily met appellant at the gas station and was not afraid at any time while riding in appellant's car. In fact, testimony showed that she felt comfortable enough to braid his hair the first time she met him.

Appellant believes the second line of questioning would have suggested another reason for Sheila to fear her parents' wrath after having stayed out all night. Yet, this court has previously stated that there is no abuse of discretion where "the jury [is] already in possession of sufficient information to make a discriminating appraisal of the particular witness's possible motives for testifying falsely in favor of the government." *Christian*, 786 F.2d at 213. Here, the jury had already heard a good deal of evidence upon which appellant could have established a motive to fabricate the rape incident: the fact that Sheila had deceived her parents in order to go out with appellant, that she was a mischievous child who was on probation from juvenile court, and the fact that she was violating her probation that night by not obtaining parental approval of her whereabouts. Stark County Tr. Vol. 3 for 7/21/93 at 53; Vol. 4 for 7/22/93 at 24; Vol. 7 for 7/24/93 at 85–86.

■ As for the third line of questioning, its relevance to appellant's ability to present an effective defense is unclear. We see no logical reason why such testimony would be relevant, and appellant provides no explanation. Showing the jury "why" Sheila's parents do not approve of her dating African–Americans would not, for example, be relevant to establishing bias, assuming this is even the reason appellant finds this evidence to be significant. Furthermore, even though exposing the bias of a witness is a crucial aspect of cross-examination, a district court does not abuse its discretion nor violate the Confrontation Clause by prohibiting testimony where, as here, "'the relevance of such questions [i]s unclear and the risk of prejudice [i]s real.'" *United States v. Piche*, 981 F.2d 706, 716 (4th Cir.1992), *cert. denied*, 508 U.S. 916, 113 S.Ct. 2356, 124 L.Ed.2d 264 (1993) (quotation omitted) (affirming the trial court's decision, in a racial violence case where the victim who died was Asian–American and the clear aggressor was Caucasian, disallowing cross-examination of a co-victim concerning his alleged participation in a previous fight with other Asian–Americans against African–Americans).

■ Even assuming the state court made an error in limiting cross-examination in the manner that it did, this court will grant federal habeas relief only where the error rises to the level of being a denial of fundamental fairness. *See Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir.1993). In other words, this court must assess whether any error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)); *O'Neal v. McAninch*, 513 U.S. 432, 435–36, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995). Appellant is correct to point out that under the Supreme Court's decision in *O'Neal*, when a federal judge in a habeas proceeding is in grave doubt as to whether an error of federal law has had such an effect, the error cannot be considered harmless. *See id.* at 436, 115 S.Ct. 992. However, appellant's situation did not engender such doubt in the district court nor does it in this court. Given the evidence that was presented to the jury, any possible

error must be considered harmless, and appellant suffered no actual prejudice. Therefore, appellant's Confrontation Clause claim does not provide a sufficient basis for granting habeas relief.

## E. State Evidentiary Rulings

 Appellant next asserts various violations of state evidentiary rules, but these claims similarly fail to pass the stringent hurdles of habeas review. Appellant first argues that testimony by Sheila's mother that her daughter had never before claimed rape and that she and her husband could not handle the fact that after the alleged rape incident Sheila would scream during the night and crawl into bed with her mother was irrelevant and should not have been admitted pursuant to OH. R. EVID. 403(A).[14] We disagree. The state court committed no error in admitting this testimony. The veracity of Sheila's claims of having been raped was first brought into question by appellant during cross-examination of Sheila. Stark County Tr. Vol. 4 for 7/22/93 at 23–27. Thus, Sheila's mother's testimony was relevant to substantiating her daughter's claims and rebutting the defense's allegations, and the probative value of this testimony was not substantially outweighed by any dangers of unfair prejudice against appellant.

 Appellant also contends that he was improperly prevented from cross-examining Sheila's mother regarding Sheila's allegations of abduction and rape when she was fourteen years old and her more recent fabrication of pregnancy. In general, the trial judge correctly determined that Sheila's mother's testimony did not open the door for all testimony regarding prior sexual acts of the victim, and appellant failed to make a proffer for the record that he intended to ask Sheila's mother about her daughter having made false claims of rape in the past. However, appellant did make a proffer for the record that he would only ask whether Sheila had ever made a false claim that someone had gotten her pregnant. Stark County Tr. Vol. 4 for 7/22/93 at 77. While we question the propri-

ety of the state court's decision not to allow this proffered line of questioning, we do not believe that this evidentiary ruling so undermined the fundamental fairness of the trial that due process was denied.

 Finally, appellant objects that the prosecutors "knew or reasonabl[y] should have known that the testimony [given by Sheila's mother] was false and that Sheila was in fact a consistent face within the drug community venturing out to known high crime area[s] in the wee-hours of the morning . . . to meet with black men in parks, many miles from her home." Appellant's Pro-se Br. at 32 (internal quotations omitted). Yet, this is not a proper issue for review by a habeas court since appellant received a full trial with the opportunity to present any such relevant evidence to the jury. It is not the job of a habeas court to reweigh testimony and to reevaluate the credibility of witnesses; such responsibilities are those of a jury. Appellant has also presented no reason for this court to believe that the prosecutors intentionally allowed any witness to perjure herself on the stand.

## F. Ineffective Assistance of Counsel during Pre-trial Stage

 Appellant further asserts that this court should grant him federal habeas relief because he was denied effective assistance of counsel during the pre-trial phase of the state criminal proceedings against him. Appellant's main complaint relates to the state court's failure to substitute another attorney for Attorney Becker when appellant instituted an action against Attorney Becker leading to a conflict of interest. We have reviewed the record and appellant's brief and conclude that this claim is without merit for reasons adequately explained by the district court. We only add that Attorney Becker filed a motion for leave to withdraw on February 25, 1993, but that by March 12, 1993, the Ohio Supreme Court had ordered a stay in the proceedings against appellant in response to his petition for disqualification of the trial judge. J.A. at 174 (Stark County Trial

---

14. OH. R. EVID. 403(A) (1993) states that "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

Docket). This stay prevented the state trial court from dealing with Attorney Becker's motion until June 16, 1993 soon after the stay was lifted. At this time, the trial court appointed Attorney Mackey to be co-counsel with Attorney Becker pending the competency hearing on July 19, 1993. Stark County Tr. for 6/16/93 at 24. Attorney Becker's motion to withdraw was granted before trial commenced on July 19, 1993 immediately after the competency determination. Stark County Tr. Vol. 1 for 7/19/93 at 69. The trial judge had obvious reasons for waiting to remove Attorney Becker until a competency determination was made allowing Attorney Becker to bring Attorney Mackey up to speed on the case was clearly advantageous for the defense, and appellant can point to no prejudicial disadvantage.

■ We also respond to two related arguments raised by appellant on appeal. First, appellant claims that other than the motions filed by appellant himself, no other substantive motions were ever filed on his behalf by any of his court-appointed attorneys. Appellant's Pro-se Br. at 38. However, appellant never raised this specific issue on direct appeal to the Ohio Court of Appeals and the Ohio Supreme Court and is now barred from doing so because of procedural default. See State v. Combs, 100 Ohio App.3d 90, 652 N.E.2d 205, 209 (1994) (holding that post-conviction relief is not available by virtue of the doctrine of res judicata to address constitutional claims that could have been raised on direct appeal from the conviction and sentence); State v. Perry, 10 Ohio St.2d 175, 226 N.E.2d 104, 105–06 (1967) (syllabi # 7 and # 9).[15] In such a situation, a petitioner is considered to have waived the claims for federal habeas purposes "unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error." Rust v. Zent, 17 F.3d 155, 160 (6th Cir.1994). In the instant case, appellant has not demonstrated cause for failing to present this issue to the state courts, and we thus consider it waived for purposes of federal habeas corpus review. Appellant further argues that after his trial

ended he discovered that Attorney Mackey, his court-appointed counsel throughout his trial, had previously represented a client with interests adverse to his in another matter. Appellant's Pro-se Br. at 40. Even assuming the accuracy of this statement, there is no evidence to suggest that Attorney Mackey's performance was in any way influenced by this factor and that, but for this alleged conflict, the outcome of appellant's trial would have been different.

## G. Other "Manifest" Errors

As his seventh ground for habeas relief, appellant asserts various "other errors ... committed at trial not raised on [direct appeal], but apparent on the record." Appellant's Pro-se Br. at 40. Appellant's supplemental brief states that he is referring to two issues in particular, although in actuality he presents three. Appellant's Supplemental Pro-se Br. at 9.

■ The first claim regarding the proceedings that took place on June 16, 1993 during which appellant was directed to undergo a psychological evaluation to determine competency to stand trial is patently frivolous. Appellant's argument is basically that in requiring him to undergo such an evaluation, the district court made a public statement that he was insane. Appellant has not presented any basis for this court to conclude that his constitutional rights were violated by these proceedings nor has he shown how this pre-trial proceeding denied him a fundamentally fair trial.

■ Appellant also asserts that the government's "deliberate and intentional secreting" of transcripts (i.e., failure to transcribe) for the proceedings of July 24, 1993 compromised his ability to present certain arguments for review by the Ohio Court of Appeals, specifically his claims of a Brady violation, a Daubert violation, and the improper admission of "oppressively prejudicial, unduly confusing, and contradictory scientific testimony." Appellant's Supplemental Pro-se Br. at 13–15. Upon careful review of the transcripts of the July 24,

---

**15.** Any syllabus of an Ohio Supreme Court opinion announces the law of the case. See Smith v.

Klem, 6 Ohio St.3d 16, 450 N.E.2d 1171, 1173 (1983).

1993 proceedings, we conclude that failure to transcribe these proceedings did not prejudice appellant since the transcripts do not support such claims, the merits of which are discussed individually later in this opinion. Besides his own speculations, appellant also does not present any reason why we should suspect these transcripts to be inaccurate.

■ Appellant's last argument relates to the confusing series of nunc pro tunc sentencing entries made by the state trial court. At his sentencing hearing, the trial court imposed on appellant a term of imprisonment of 15–25 years (with 15 actual years) on each of the three counts, to be served consecutively, and a $10,000 maximum fine on each of the three counts. Stark County Tr. Vol. 14 for 9/9/93 at 70. This sentence was reflected in two judgment entries made on September 10, 1993. J.A. at 157, 160 (Ex. B–1) (Found Guilty By Jury and Sentence Imposed Sept. 10, 1993). In other words, as of September 1993, appellant was facing a total of 45–75 years of imprisonment and $30,000 in fines. For whatever reason, the state court made another judgment entry as of December 27, 1993 with respect to his convictions on Counts One, Two, and Three but· this time sentencing appellant only for the kidnapping. J.A. at 162 (Ex. B–2) (J. Entry Nunc Pro Tunc as of Dec. 27, 1993). In October of 1995 several months after appellant filed his habeas petition with the federal courts, the state court entered another judgment sentencing appellant as of August 30, 1995 to 15–25 years imprisonment for each of the three counts to be served consecutively, imposing a $10,000 fine for kidnapping, and imposing a $20,000 fine for each of the counts of rape. J.A. at 169 (Ex. B–3) (J. Entry Nunc Pro Tunc as of Aug. 30, 1995).

■ We understand appellant's frustration with the disorderly and confusing method by which he was sentenced in state court. However, we agree with the district court that the August nunc pro tunc entry was most likely made in order to eradicate any suggestion by the December 1993 nunc pro tunc judgment entry that appellant's sentences for the two rapes had been dropped. The reason for the December 1993 nunc pro tunc judgment entry is unclear; what is clear is that that entry as it now stands was made in error. Ohio courts may amend a journal entry nunc pro tunc in order to correct any errors so that the final sentencing entry accurately reflects the penalty imposed at the sentencing hearing. *See State v. Greulich,* 61 Ohio App.3d 22, 572 N.E.2d 132, 134 (1988). We emphasize that appellant cannot expect to benefit from such clerical errors, especially when there is no valid reason why appellant should think that two rape convictions would carry no sentence.

■ We do agree with appellant that the sudden increase in fines from $30,000 in September of 1993 to $50,000 by August of 1995 needs to be explained since a "nunc pro tunc order cannot be used to supply omitted action, or to indicate what the court might or should have decided, or what the trial court intended to decide." *Id.* Yet, with respect to this claim, resort to habeas relief is premature. Appellant does not state that he has exhausted all available state remedies with respect to this claim, and there is no indication in the record that he has taken advantage of all available direct and post-conviction remedies. While the general rule is that a petition in its entirety must be dismissed for lack of exhaustion if it contains even one issue which was not properly presented to the state courts, *see Rose v. Lundy,* 455 U.S. 509, 518–20, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), in certain circumstances where doing so would not be in the interest of efficiency and justice, this court may address exhausted claims and dismiss only those that are unexhausted. *See Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir.1990); *Cain v. Redman,* 947 F.2d 817, 820 (6th Cir.1991), *cert. denied,* 503 U.S. 922, 112 S.Ct. 1299, 117 L.Ed.2d 521 (1992).

## H. *Brady* Doctrine

■ Appellant also contends that the state's delay in revealing test results gathered by its criminalist,[16] Michele Mitchell,

---

16. Mitchell testified that as a criminalist she processes crime scenes and performs laboratory work, that her main function involves the analysis of blood, biological fluids, saliva, semen,

constitutes a violation of the principles espoused in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), in which the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 83 S.Ct. 1194. No one disputes that under the *Brady* doctrine, favorable evidence can be either exculpatory evidence or impeachment evidence. *See United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). However, based on the understanding that "[i]n general, the principles announced in *Brady* do not apply to a tardy disclosure of exculpatory information, but to a complete failure to disclose," this court has said that "[i]f previously undisclosed evidence is disclosed, as here, during trial, no *Brady* violation occurs unless the defendant has been prejudiced by the delay in disclosure." *United States v. Word*, 806 F.2d 658, 665 (6th Cir.1986), *cert. denied*, 480 U.S. 922, 107 S.Ct. 1383, 94 L.Ed.2d 697 (1987). This is logical since under the *Brady* doctrine, "[e]vidence is material 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' "[17] *United States v. Phillip*, 948 F.2d 241, 249 (6th Cir.1991) (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 57, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987)), *cert. denied*, 504 U.S. 930, 112 S.Ct. 1994, 118 L.Ed.2d 590 (1992). After all, the "overriding concern [is] with the justice of the finding of guilt," not with the accused's ability to prepare for trial. *United States v. Agurs*, 427 U.S. 97, 113 & n. 20, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Pursuant to the foregoing standards and principles, a de novo review of each of appellant's assertions reveals that there is no *Brady* violation. *See Phillip*, 948 F.2d at 249.

Appellant's first objection relates to the criminalist's testimony regarding secretor/nonsecretor status (i.e., whether one's blood type can be determined from one's saliva). The criminalist performed two tests on appellant's saliva: the first revealed that he was a nonsecretor while the second showed that he was a secretor. Appellant claims he should have been informed earlier that two tests had been done and that the first tagged him as a nonsecretor. Yet, this information was presented to the jury when the state's criminalist was called back to the stand for rebuttal. Stark County Tr. Vol. 7 for 7/24/93 at 4, 13. The jury knew that two tests were conducted and, more importantly, that they showed contradictory results.

The criminalist also testified that an electrophoresis test on bodily fluids collected from Sheila after the alleged rape incident revealed PGM factors 1+ and 2+, that Sheila's PGM subtype was a 1+, and that for appellant, his PGM subtype was a 1+2+. Stark County Tr. Vol. 5 for 7/22/93 at 46–50. According to the criminalist, this revealed that the 2+ could not have come from Sheila but could have come from appellant. Appellant, on the other hand, obtained a report from an attorney in Montana, who had represented appellant in a different case, indicating that appellant was PGM type 2+2+ and PGM type 2–1.[18] Appellant's Br. at 12. Appellant seems to think that a *Brady* violation arises from the fact that appellant has found various cases attesting to the existence of a PGM type 2+2+ but when presented with this Montana document the criminalist testified that one would never repeat the same factor twice and that it had to be a typographical error. These facts, however, do not present a *Brady* issue because: (1) appellant had the Montana report in his possession before the criminalist retook the stand; (2) there is no evidence that the prosecution even knew about this report before appellant brought it to their attention; and (3) the fact that the criminalist's testimony could be im-

hairs, and fibers, and that her educational background is in forensic chemistry. Stark County Tr. Vol. 5 for 7/22/93 at 31.

17. "[A] reasonable probability is one 'sufficient to undermine confidence in the outcome.' " *Phillip*, 948 F.2d at 249 (quoting *Ritchie*, 480 U.S. at 57, 107 S.Ct. 989).

18. Mitchell's testimony suggested that she believed the "2–1" referred to another protein enzyme, esterase D, and not to PGM. Stark County Tr. Vol. 7 for 7/24/93 at 24. We will, however, accept appellant's allegation as true since this is irrelevant to our resolution of this issue.

peached in various ways does not pose any constitutional problem. In fact, there would be no need for a jury if trials did not contain such inconsistencies. If appellant wished to pursue the inconsistencies further and do more research to verify the existence of PGM 2+2+, he should have requested a recess or have been more prepared for the criminalist's testimony.

■ Appellant points to three other inconsistencies. First, while the criminalist testified that she used two separate saliva samples, her report indicated only one. Second, the criminalist testified that she performed a Lewis antigen test, and yet the laboratory records indicate no such test having been done. Third, appellant alleges that the State of Ohio has admitted that the criminalist did not have the ability to perform the electrophoresis test. In all three situations, appellant fails to show how there is a *Brady* issue when there does not seem to be any withholding of evidence.

## I. Scientific Reliability

■ Appellant's next claim concerns the reliability or fairness of the scientific evidence presented through the testimony of Mitchell. Appellant relies primarily on *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); however, we agree with the district court that *Daubert* concerned the Federal Rules of Evidence which is not relevant to appellant's conviction. Moreover, as a state evidentiary matter, appellant presents no reason for this court to believe Mitchell's testimony was admitted in error nor any reason to believe that this testimony denied appellant a fundamentally fair trial.

## J. Reasonable Constructive Notice of Trial Date

■ Appellant also contends that his Fourteenth Amendment due process rights were violated when he was not given reasonable constructive notice of which of his two trials would proceed first—that involving Sheila or that involving the other victim Janet Homan—and that as a result he was unprepared and unable to present any witnesses. The Supreme Court has held that "[a]n elementary and fundamental requirement of due process in any proceeding ... is

notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). We agree with appellant that the district court improperly relied upon an unofficial office memorandum of docket activity attached as an appendix to appellant's counsel's brief as evidence that sufficient notice was given to appellant regarding his trial date on Counts One and Two. We also acknowledge that generally a court does not speak orally, so that any indication the trial court gave at the pre-trial hearing on June 16, 1993 of its intention to commence on July 19, 1993 as soon as appellant was determined competent to stand trial is irrelevant. *See Ohio Valley Radiology Assocs., Inc. v. Ohio Valley Hosp. Ass'n*, 28 Ohio St.3d 118, 502 N.E.2d 599, 604 (1986).

However, while Ohio courts have held that "an entry of the date of trial on the court's docket constitutes reasonable, constructive notice of that fact," *see id.*, such an entry is not the only method of providing notice. Here, the court's docket only contained an entry indicating that a competency hearing was to be held on July 19, 1993, *see* J.A. at 174–75 (Stark County Trial Docket), but the record does show that appellant's appointed counsel received an assignment notification from the court indicating that "if Mr. Norris is found competent to stand trial at the above [competency] hearing, the jury trial for Mr. Norris and Miss Southall will begin immediately thereafter." Stark County Tr. Vol. 1 for 7/19/93 at 84–85. We thus conclude that appellant had constructive notice that his trial on Counts One and Two would likely commence on July 19, 1993 and has failed, in any case, to present any evidence of actual prejudice.

## K. Ineffective Assistance of Counsel on Appeal as of Right

## L. The Right of Appeal: Receiving a Full and Fair Fact-finding Hearing

## M. Due Process During Appellate Phases of Criminal Proceedings

■ We discuss the last three of appellant's claims together as he has briefed

them in this manner. The first of these three grounds relates to the alleged ineffectiveness of his counsel during his direct appeal to the Ohio Court of Appeals. Appellant points to five specific examples of this ineffectiveness: (1) his counsel's failure to ensure that the proceedings of July 24, 1993 be transcribed, (2) his counsel's failure to raise either the *Brady* claim or a claim of unreliability of scientific evidence, (3) his counsel's preparation and annexation of Exhibit G to his brief defeating appellant's claim of lack of constructive notice of trial, (4) his counsel's failure to specify what particular errors constituted his claim that "other errors ... apparent in the record but not raised on this appeal [had been committed]," (5) his counsel's decision to allow Southall's attorney at oral argument to make arguments and to raise issues adverse to his interests, and (6) the fact that "for the most part [his counsel raised] ... the very same issues that had been raised by the appellant pro se, thereby reducing the appeal itself to but a meaningless ritual o[f] manifest injustice." Appellant's Br. at 69.

 We have already rejected the first four claims substantively either for failure to show actual prejudice or lack of merit. Appointed counsel cannot be deemed ineffective for failing to raise frivolous claims. With respect to the fifth assignment of ineffectiveness, appellant's objections to the consolidation of his appeal with co-defendant Southall's had already been heard and denied, and appellant's appointed counsel was merely following procedures typical for co-appellants. Appellant also fails to explain in what particular manner Southall prejudiced his appeal. Appellant's last criticism is not logical unless he is suggesting that the claims he has advanced pro se are meritless. Moreover, appellant has not been able to point to any other colorable claims which his counsel failed to pursue.

 We also reject appellant's contention that he was deprived the right of appeal because the Ohio Court of Appeals failed to provide him a full and fair fact-finding hearing on all of the issues he set forth. We agree with the district court that the Ohio Court of Appeals does not retry factual is-

sues and believe the Ohio Court of Appeals adequately reviewed all of the legal issues presented by appellant except his claim of insufficiency of the evidence. On either habeas review or direct appeal to the Ohio Court of Appeals, an insufficiency of the evidence claim is reviewed with the evidence viewed in the light most favorable to the prosecution. *See State v. Lebron,* 97 Ohio App.3d 155, 646 N.E.2d 481, 483 (1994), *appeal not allowed,* 71 Ohio St.3d 1456, 644 N.E.2d 1028 (1995). Under such a standard, there was certainly sufficient evidence on which to convict appellant of the crimes in question. Any error in failing to review this claim was thus harmless. Appellant's objection to the Ohio Court of Appeals' denial of his request to give oral argument on his own behalf similarly lacks merit. Appellant was appointed counsel who submitted a written brief and made oral argument before the Ohio Court of Appeals. Appellant was accorded due process.

With respect to all other related arguments presented by appellant, we adopt the district court's reasoning.

## III. CONCLUSION

As discussed in Part II.G. *supra,* appellant's claim regarding the apparent increase in the fine component of his sentence is dismissed without prejudice for failure to exhaust. With respect to all of appellant's other claims, for the foregoing reasons appellant's petition for a writ of habeas corpus is denied, and the judgment of the district court is **AFFIRMED.**

BRIGHT, Circuit Judge, concurring separately.

I concur specially with Judge Moore's excellent opinion only to observe that I dissented in the Eighth Circuit case of *Orsini v. Wallace,* 913 F.2d 474 (8th Cir.1990) on the issue of whether the petitioner had consented to the trial of his habeas case by a magistrate judge.

The circumstances here show that petitioner has consented to the magistrate judge hearing his petition. I agree to the resolu-

tion of this issue in the court's opinion at maj. op. pp. 325–326.